GARRETT *v.* MOORE-McCORMACK CO., INC. ET AL.

No. 67. Argued November 12, 1942.—Decided December 14, 1942.

240

*Mr. Abraham E. Freedman,* with whom *Mr. Milton M. Borowsky* was on the brief, for petitioner.

*Mr. Rowland C. Evans, Jr.* for respondents.

MR. JUSTICE BLACK delivered the opinion of the Court.

The petitioner was injured while working as a seaman for respondent on a vessel traveling between the United States and European ports, and spent a number of months in hospitals in Gdynia, Poland, and in the United States. He brought this suit in a Pennsylvania state court for damages pursuant to § 33 of the Merchant Marine (Jones) Act,[1] and for maintenance and cure.[2]  The Pennsylvania courts, as this litigation evidences, are apparently quite willing to make themselves available for the enforcement of these rights.

Petitioner attributed his condition to a blow by a hatch cover which allegedly fell on him through respondent's

---

[1] 46 U. S. C. 688.

[2] The right of a seaman to recover damages for negligent injury arises under the Jones Act, and the right to maintenance and cure, irrespective of negligence, arises under the law of admiralty.  These rights are independent and cumulative.  *Pacific S. S. Co.* v. *Peterson,* 278 U. S. 130, 138.  For a general discussion of maintenance and cure, see *The Osceola,* 189 U. S. 158; *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 371; *Calmar S. S. Corp.* v. *Taylor,* 303 U. S. 525, 527.

negligence. Respondent joined issue generally, contested the extent of any injuries received, and further contended that if serious injuries did exist they were caused by a fight in Copenhagen or by accidents prior to the voyage. As an additional defense the respondent also alleged that for a consideration of $100 petitioner had executed a full release. Denying that he had any knowledge of having signed such an instrument, the petitioner asserted that, if his name appeared on it, his signature was obtained through fraud and misrepresentation, and without "legal, binding and valid consideration."

The petitioner did execute a release for $100 several days after his return to this country. His testimony was that his discussion with respondent's claim agent took place while he was under the influence of drugs taken to allay the pain of his injury, that he was threatened with imprisonment if he did not sign as directed, and that he considered the $100 a payment of wages.[3] The respondent's evidence was that the $100 was paid not for wages but to settle all claims growing out of the petitioner's injuries, that the petitioner had not appeared to be under the influence of drugs, and that no threats of any kind were made.

Upon this and much other evidence relating to the cause and extent of the injuries, the jury rendered a verdict for the petitioner for $3000 under the Jones Act, and $1000 for maintenance and cure.

Respondent made a motion for a new trial and judgment *non obstante veredicto* which under the Pennsylvania

---

[3] There were two elements of the wage dispute: (a) whether wages should be computed at $50.00 or $72.50 a month; (b) whether, since petitioner was left in a hospital in Poland and could not return with his ship, he should have been paid wages until he actually arrived in his home port. He was paid only up to the time he left the vessel. There is clear authority to support a claim for wages to the end of the voyage for which petitioner had been signed. *The Osceola, supra,* 175.

practice was submitted to the trial court *en banc*.[4]   That
court gave judgment to the defendant *non obstante vere-
dicto,* not upon an appraisal of disputed questions of fact
concerning the accident, but because of a conclusion that
petitioner had failed to sustain the burden of proof re-
quired under Pennsylvania law to invalidate the release.
It conceded that, "in admiralty cases, the responsibility is
on the defendant to sustain a release rather than on a
plaintiff to overcome it," but concluded that since peti-
tioner had chosen to bring his action in a state, rather
than in an admiralty, court, his case must be governed
by local, rather than admiralty principles.   Under the
Pennsylvania rule, one who attacks the validity of a writ-
ten release has the burden of sustaining his allegation by
"clear, precise, and indubitable" evidence, meaning evi-
dence "that is not only found to be credible but of such
weight and directness as to make out the facts alleged
beyond a reasonable doubt."   Witnesses who testify
against the release must not only be credible, but "dis-
tinctly remember the facts to which they testify and nar-
rate the details exactly."   The court held that, since the
petitioner had not sustained this burden of proof, the trial
judge should have withdrawn the case from the jury.

The Supreme Court of Pennsylvania took a somewhat
different view.   It held that in an action of this sort
the Pennsylvania court was obligated "to apply the fed-
eral law creating the right of action in the same sense
in which it would have been applied in the federal courts."
However, it affirmed the judgment in the belief that the
rule as to burden of proof on releases does not affect the
substantive rights of the parties, but is merely procedural,
and is therefore controlled by state law.

---

[4] In Pennsylvania the trial judge does not pass upon such motions
alone; instead, they are heard and decided by three judges of the
court sitting *en banc*.   Purdon, Penn. Stat. Ann., Vol. 12, Par. 680.

I. Respondent's argument that the Pennsylvania court should have applied state rather than admiralty law in measuring the rights of the parties cannot be sustained.

We do not have in this case an effort of the state court to enforce rights claimed to be rooted in state law. The petitioner's suit rested on asserted rights granted by federal law and the state courts so treated it. Jurisdiction of the state court to try this case rests solely upon § 33 of the Jones Act and upon statutes traceable to the Judiciary Act of 1789 which "in all civil causes of admiralty and maritime jurisdiction" saves to suitors "the right of a common-law remedy where the common law is competent to give it." [5] These statutes authorize Pennsylvania courts to try cases coming within the defined category.[6] Whether Pennsylvania was required by the Acts to make its courts available for those federal remedies, or whether it could create its own remedy as to maintenance and cure based on local law, we need not decide;[7] for, having voluntarily opened its courts to petitioner, the questions are whether Pennsylvania was thereupon required to give to petitioner the full benefit of federal law and, if so, whether it failed to afford that benefit.

There is no dearth of example of the obligation on law courts which attempt to enforce substantive rights arising from admiralty law to do so in a manner conforming to admiralty practice. Contributory negligence is not a barrier to a proceeding in admiralty or under the Jones Act, and the state courts are required to apply this rule in Jones

---

[5] 28 U. S. C. § 371.

[6] *Engel* v. *Davenport,* 271 U. S. 33, 37, 38 (Jones Act); *The Belfast,* 7 Wall. 624, 644; *Leon* v. *Galceran,* 11 Wall. 185, 187–188; *Panama R. Co.* v. *Vasquez,* 271 U. S. 557, 560–561. The last three cases involve non-statutory actions.

[7] *The Hamilton,* 207 U. S. 398, 404; *Just* v. *Chambers,* 312 U. S. 383, 391.

Act actions. *Beadle* v. *Spencer*, 298 U. S. 124. Similarly state courts may not apply their doctrines of assumption of risk in actions arising under the Act. *The Arizona* v. *Anelich*, 298 U. S. 110; *Socony-Vacuum Co.* v. *Smith*, 305 U. S. 424. State courts, whether or not applying the Jones Act to actions arising from maritime torts, have usually attempted, although not always with complete success, to apply admiralty principles.[8] The federal courts, when treating maritime torts in actions at law rather than in suits in admiralty, have also sought to preserve admiralty principles whenever consonant with the necessities of common law procedure.[9]

This Court has specifically held that the Jones Act is to have a uniform application throughout the country, unaffected by "local views of common law rules." *Panama R. Co.* v. *Johnson*, 264 U. S. 375, 392. The Act is based upon, and incorporates by reference, the Federal Employers' Liability Act, which also requires uniform interpretation. *Second Employers' Liability Cases*, 223 U. S. 1, 55 *et seq.* This uniformity requirement extends to the type of proof necessary for judgment. *New Orleans & Northeastern R. Co.* v. *Harris*, 247 U. S. 367.

In many other cases this Court has declared the necessary dominance of admiralty principles in actions in vindication of rights arising from admiralty law.[10] *Belden* v.

---

[8] *Colonna Shipyard* v. *Bland*, 150 Va. 349, 358, 143 S. E. 729 (contributory negligence); *Paulsen* v. *McDuffie*, 4 Cal. 2d 111, 47 P. 2d 709 (assumption of risk); *Lieflander* v. *States S. S. Co.*, 149 Ore. 605, 42 P. 2d 156 (burden of proof).

[9] *Berwind-White Coal Mining Co.* v. *Eastern Steamship Corp.*, 228 F. 726; *Port of New York Stevedoring Corp.* v. *Castagna*, 280 F. 618.

[10] *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205; *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149, 159; *Carlisle Packing Co.* v. *Sandanger*, 259 U. S. 255, 259; *Messel* v. *Foundation Co.*, 274 U. S. 427, 434; and see *Schuede* v. *Zenith*

*Chase*, 150 U. S. 674, an 1893 decision which respondent relies upon as establishing a contrary rule, has never been thus considered in any of the later cases cited.

It must be remembered that the state courts have concurrent jurisdiction with the federal courts to try actions either under the Merchant Marine Act or in personam such as maintenance and cure. The source of the governing law applied is in the national, not the state, government.[11] If by its practice the state court were permitted substantially to alter the rights of either litigant, as those rights were established in federal law, the remedy afforded by the State would not enforce, but would actually deny, federal rights which Congress, by providing alternative remedies, intended to make not less but more secure. The constant objective of legislation and jurisprudence is to assure litigants full protection for all substantive rights intended to be afforded them by the jurisdiction in which the right itself originates. Not so long ago we sought to achieve this result with respect to enforcement in the federal courts of rights created or governed by state law.[12] And admiralty courts, when invoked to protect rights rooted in state law, endeavor to determine the issues in accordance with the substantive law of the State.[13] So here, in trying this case the state court was bound to proceed in such manner that all the substantial rights of the parties under controlling federal law would be protected. Whether it did so raises a federal question reviewable

---

*S. S. Co.,* 216 F. 566. Disagreement over the Constitutional issues of the cases in the Jensen line has not extended to this principle. Cf. *The Lottawanna,* 21 Wall. 558, 575; *Detroit Trust Co.* v. *The Thomas Barlum,* 293 U. S. 21, 43.

[11] *The Steamer St. Lawrence,* 1 Black 522, 526–527.

[12] *Erie R. Co.* v. *Tompkins,* 304 U. S. 64.

[13] *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, 242. Cf. *The Hamilton, supra.*

here under § 237 (b) of the Judicial Code, 28 U. S. C. § 344 (b).[14]

II. A seaman in admiralty who attacks a release has no such burden imposed upon him as that to which the Pennsylvania rule subjects him. Our historic national policy, both legislative and judicial, points the other way. Congress has generally sought to safeguard seamen's rights. The first Congress, on July 20, 1790, passed a protective act for seamen in the merchant marine service, safeguarding wage contracts, providing summary remedies for their breach, and requiring shipowners to keep on board fresh medicines in condition for use. 1 Stat. 131. The fifth Congress, July 16, 1798, 1 Stat. 605, originated our present system of marine hospitals for disabled seamen. The language of Justice Story, sitting on Circuit in 1823, described the solicitude with which admiralty has traditionally viewed seamen's contracts:

"They are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and *cestuis que trustent* with their trustees. . . . If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that *pro tanto* the bargain ought to be set aside as inequitable. . . . And on every occasion the court expects to be satisfied, that the compensation for every material alteration is entirely adequate to the diminutior

---

[14] See *Claflin* v. *Houseman*, 93 U. S. 130, 136–42; cf. *Standard Oil Co.* v. *Johnson*, 316 U. S. 481, 483.

of right or privilege on the part of the seamen." *Harden* v. *Gordon,* Fed. Cas. No. 6047, at pp. 480, 485.

In keeping with this policy, Congress has itself acted concerning seamen's releases in respect to wages by providing that a release for wages must be signed by a seaman in the presence of a shipping commissioner, and that, even then, "any court having jurisdiction may on good cause shown set aside such release and take such action as justice shall require." [15] General Congressional policy is further shown in the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. §§ 915, 916, in which all releases not made under the express terms of the Act are declared invalid.

The analogy suggested by Justice Story, in the paragraph quoted above, between seamen's contracts and those of fiduciaries and beneficiaries remains, under the prevailing rule treating seamen as wards of admiralty, a close one. Whether the transaction under consideration is a contract, sale, or gift between guardian and ward or between trustee and cestui, the burden of proving its validity is on the fiduciary. He must affirmatively show that no advantage has been taken; and his burden is particularly heavy where there has been inadequacy of consideration.[16]

The wardship theory has, as was recognized by the courts below, marked consequence on the treatment

---

[15] 46 U. S. C. § 597. See *Pacific Mail S. S. Co.* v. *Lucas,* 258 U. S. 266; *ibid.,* 264 F. 938.

[16] *Michoud* v. *Girod,* 4 How. 503, 556; cf. *Magruder* v. *Drury,* 235 U. S. 106, 120; *Thorn Wire Co.* v. *Washburn & Moen Co.,* 159 U. S. 423, 443; *Klamath Indians* v. *United States,* 296 U. S. 244, 254; and *United States* v. *Dunn,* 268 U. S. 121, 131. The admiralty rule is well within the bounds put on these other relationships, since many trustee-cestui or guardian and ward contracts are voidable on the election of the beneficiary. See *Wade* v. *Pulsifer,* 54 Vt. 45, 62; *Hatch* v. *Hatch,* 9 Ves. 291 (1804); and cf. Madden, Domestic Relations, Ch. 12, and 3 Bogert, Trusts, § 493.

given seamen's releases. Such releases are subject to careful scrutiny. "One who claims that a seaman has signed away his rights to what in law is due him must be prepared to take the burden of sustaining the release as fairly made with and fully comprehended by the seaman." *Harmon* v. *United States,* 59 F. 2d 372, 373. We hold, therefore, that the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding.[17]

This general admiralty rule applies not only to actions for maintenance and cure but also to actions under § 33 of the Merchant Marine Act. That law is to be liberally construed to carry out its full purpose, which was to enlarge admiralty's protection to its wards. *Warner* v. *Goltra,* 293 U. S. 155, 156, 162; *The Arizona* v. *Anelich,* 298 U. S. 110, 123. Being an integral part of the maritime law, rights fashioned by it are to be implemented by admiralty rules not inconsistent with the Act. *Socony-Vacuum Co.* v. *Smith,* 305 U. S. 424, 430.

III. The Pennsylvania Supreme Court has concluded that in solving problems of procedural, as distinguished from substantive, law, the law court may apply its own doctrine; and that the locus of burden of proof presents a procedural rather than a substantive question.

---

[17] See the *Harmon* case, *supra,* and *The Standard,* 103 F. 2d 437; *Sitchon* v. *American Export Lines,* 113 F. 2d 830; *Hume* v. *Moore-McCormack Lines,* 121 F. 2d 336. For somewhat comparable cases involving releases for personal injuries arising from nonmaritime torts, see *Union Pacific Ry. Co.* v. *Harris,* 158 U. S. 326; *Chesapeake & Ohio Ry. Co.* v. *Howard,* 178 U. S. 153, 167; *Texas & Pacific Ry. Co.* v. *Dashiell,* 198 U. S. 521. Cf. *Duncan* v. *Thompson,* 315 U. S. 1.

Much of what we have said above concerning the necessity of preserving all of the substantial admiralty rights in an action at law is incompatible with the conclusion of the court below. The right of the petitioner to be free from the burden of proof imposed by the Pennsylvania local rule inhered in his cause of action. Deeply rooted in admiralty as that right is, it was a part of the very substance of his claim and cannot be considered a mere incident of a form of procedure. *Central Vermont Ry. Co.* v. *White,* 238 U. S. 507, 511, 512; *Cities Service Co.* v. *Dunlap,* 308 U. S. 208, 212; and cf. *The Ira M. Hedges,* 218 U. S. 264, 270. Pennsylvania having opened its courts to petitioner to enforce federally created rights, the petitioner was entitled to the benefit of the full scope of these rights. The cause is reversed for action not inconsistent with this opinion.

*Reversed.*