## LOPOCZYK v. CHESTER A. POLING, Inc.
### No. 93.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1945.

458

Sidney A. Schwartz, of New York City (Alexander & Ash, Joseph M. Meehan, and Edward Ash, all of New York City, on the brief), for defendant-appellant.

Edmund F. Lamb, of New York City (Purdy & Lamb and Thomas J. Irving, all of New York City, on the brief), for plaintiff-appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff, a mate on defendant's tanker "Poling No. 18," sued by way of civil action in the District Court to recover under the Jones Act, 46 U.S.C.A. § 688, for personal injuries received in the course of his employment. The accident occurred about noon on March 12, 1942, while the tanker was moored to the dock of the Royal Petroleum Company for the discharge of oil from its tanks to pipe lines on the dock. The "Poling No. 18" is a self-propelled, five-tank vessel with a hollow steel mast stepped into the deck between the first and second tanks. Its equipment for the discharge of oil includes a boom which is footed to the mast at a point 4½ to 5 feet above deck level and which is raised and lowered by topping lifts, themselves attached to the mast by means of a welded u-bolt. Suspended from the boom are three falls or tackles with hooks used to pick up and carry the cargo hose. There was no load on the tackle at the time of the accident; but plaintiff, who had been left in control of the discharge operations, was trying to give the vessel a list to port in order completely to empty one of the tanks. He was pulling on the blocks of the falls in that attempt when the boom fell down striking him and causing the injuries in suit.

Plaintiff's theory at trial was that defendant had negligently maintained the u-bolt in an unsafe condition, with the result that it suddenly pulled out of the welding, caused the boom to fall. Defendant, while not questioning the rupture from the welding, attempted to show that plaintiff had been contributorily negligent in putting an undue strain upon the equipment. The jury returned a verdict of $7,500, which the court in a considered opinion refused to set aside, 60 F.Supp. 839; and defendant appeals from the resulting judgment in the District Court, on the ground that the court committed a "fundamental error" in failing to recognize a sharp and basic distinction between the Jones Act and the admiralty law. This "fundamental error," defendant asserts, resulted in specific errors in refusing to take the case from the jury, in the charge, and in the admission of certain evidence.

We disagree with defendant's basic premise of the separation of the Jones Act from the admiralty law. The Act gives an injured seaman an alternative cause of action if the circumstances of his injury bring him within its terms; but the proceeding is to be governed by principles of the familiar in personam admiralty action. "The election is between alternatives accorded by the maritime law as modified, and not between that law and some non-maritime system." Panama R. Co. v. Johnson, 264 U.S. 375, 388, 389, 44 S.Ct. 391, 394, 68 L.Ed. 748. The Supreme Court has repeatedly emphasized that the Act should be interpreted to achieve results which will be consistent with those of the admiralty law. Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; Panama R. Co. v. Johnson, supra, 264 U.S. 375, 387, 392, 44 S.Ct. 391, 394, 68 L.Ed. 748; The Arizona v. Anelich, 298 U.

S. 110, 123, 56 S.Ct. 707, 80 L.Ed. 1075.[1] And in Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 379, 38 S.Ct. 501, 502, 62 L. Ed. 1171, a case arising under the act which was the forerunner of the Jones Act, it quoted with approval the language of our court, 2 Cir., 243 F. 536, 537: "The contract of a seaman is maritime, and has written into it those peculiar features of the maritime law that were considered in the case of The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; and although, because of these peculiarities, such contracts are almost invariably litigated in admiralty courts, still the contract must be the same in every court, maritime or common law."

■ Under the evidence, it follows from this established policy of construction that there was a question for the jury and the court properly denied defendant's motion for dismissal made at the close of the plaintiff's case. Neither here nor in its charge "that the owner of a vessel is under a duty to provide seamen with safe equipment"[2] did the court show confusion —as defendant asserts—with respect to the proof of negligence required under the Jones Act. The Federal Employers' Liability Act, 45 U.S.C.A. § 51, incorporated into the Jones Act, makes the shipowner liable for injury "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, * * * or other equipment." Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265; Kunschman v. United States, 2 Cir., 54 F.2d 987; Thunberg v. Panama R. Co., 2 Cir., 139 F.2d 567; Hiltz v. Atlantic Refining Co., 3 Cir., 151 F.2d 159, 161.

■ It is true that here, contrary to the admiralty practice, proof that the apparatus was unsafe was not in itself sufficient to warrant a judgment for plaintiff. But defendant made no effort to show either that the apparatus was safe[3] or that the defect was one which it could not in the exercise of reasonable care have discovered. It attempted to show that plaintiff put an excessive strain on the boom by hooking one of the tackles into the dock; but the only witness who so testified retracted his statements on cross-examination. The captain and deckhand, both defendant's witnesses, refused to say that they had seen plaintiff do so on previous occasions. Furthermore, even assuming that plaintiff had hooked into the dock, defendant did not show that this was sufficient a strain on the topping lifts to explain the pulling out of the u-bolt. The case was therefore properly submitted to the jury.

■ Defendant contends, however, that plaintiff made his case of negligence by means of improperly admitted testimony. It objects particularly to the admission of the ship's log showing an entry made by the captain on the day of the accident. The captain of the "Poling No. 18" was ashore at the time the accident occurred, but returned to the tanker at about 1:30 P. M., 1½ hours afterwards, and investigated the mast, boom, and tackle at that time. Later the same day he made the following entry in the ship's log: "Note. At 11:40 A. M., the u. bolt welded to the mast holding the boom, let go, in the weld, the boom fell down striking Capt. W. Lopoczyk with the result that he was taken by ambulance to Greenpoint hosp. in a critical condition." Defendant insists that this logbook was inadmissible in the case because it is a common-law, rather than an admiralty, proceeding. But on grounds stated above, we do not think such a distinction tenable. Since the ship's log is clearly admissible in admiralty, Warner Barnes & Co. v. Kokosai Kisen Kabushiki Kaisha, 2 Cir., 102 F.2d 450, modified 2 Cir., 103 F.2d 430; The Georgian, 5 Cir., 76 F.

---

[1] To insure uniformity of result, state courts must follow the admiralty law as to burden of proof. Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239. And although, before its recent amendment, assumption of risk was a defense under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, which the Jones Act incorporated, it was not a defense under the latter Act. The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075; Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L. Ed. 265.

[2] In Socony-Vacuum Oil Co. v. Smith, supra note 1, 305 U.S. 424, 428, 59 S. Ct. 262, 265, 83 L.Ed. 265, the Supreme Court sustained a charge "that the ship owner is under a duty to furnish the seaman with a safe place in which to work."

[3] A Coast Guard certificate, offered by defendant, related only to carriage of inflammable liquids.

2d 550; The Earnest H. Meyer, 9 Cir., 84 F.2d 496, certiorari denied Hammond Lumber Co. v. Broughton & Wiggins Nav. Co., 299 U.S. 600, 57 S.Ct. 193, 81 L.Ed. 442, it should likewise be admissible under the Jones Act. We can see no reason for adoption of a hypertechnical distinction in the rules of evidence which would lead to anomalous results, particularly in cases involving major principles of proof.[4] As a matter of fact, the statement in the entry was in accord with the testimony, as well as the probabilities; and defendant's case, as stated above, was not in contradiction, but was based upon the theory of plaintiff's contributory negligence in placing too great a strain on the device.

■ Antoncic, defendant's marine superintendent who inspected the vessel the day after the accident, testified for plaintiff on deposition and in court that the u-bolt had pulled out from the welding. Defendant argues that plaintiff failed to lay a foundation for this evidence by showing that conditions at the time of the investigation were the same as at the time of the accident. But on the testimony there was certainly a fair presumption, which defendant made no effort to refute, that conditions were unchanged. The tanker was constantly under defendant's control; and neither plaintiff nor anyone interested in his cause had any opportunity to alter the welding. The boom was still lying in the position to which it had fallen, and Antoncic himself never questioned whether there had been a change of condition. This testimony, like the statement in the logbook, was not controverted.

On the facts of record the verdict was justified, and the trial appears to have been eminently fair.

Affirmed.

---

[4] As a matter of fact, the logbook appears admissible "at law," either under the Business Entries Statute, 28 U.S.C.A. § 695, Waters v. Kings County Trust Co., 2 Cir., 144 F.2d 680, and cases cited at 683, certiorari denied 323 U.S. 769, 65 S.Ct. 121, or an admission against interest. 5 Wigmore on Evidence, 3d Ed. 1940, § 1641. The entry was made while the captain was carrying out the official duties of his position; and it was not in fact self-serving or the outgrowth of any prejudice in favor of the party offering it, so as to fall within the prohibition of Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719. The case of Northwestern Union Packet Co. v. Clough, 20 Wall. 528, 87 U.S. 528, 22 L.Ed. 406, relied on by defendant to show lack of authority to the captain, turned upon oral conversations after the event, not upon the keeping of a logbook as part of his duties.