## MASON et al. v. TEXAS CO.
### No. 1313.

District Court, D. Massachusetts.
Feb. 24, 1948.

Raymond B. Meisnere, of Boston, Mass., for plaintiffs.

William T. Ard, of New York City, Sp. Atty. and William T. McCarthy, U.S. Atty., and Edward O. Gourdin, Asst. U.S. Atty., both of Boston, Mass., for defendant Government.

HEALEY, District Judge.

This matter came on for hearing on the libels in personam of Ira S. Mason and Willard M. Carroll against The Texas Company. The libelants seek to recover certain sums allegedly due them as war bonuses for the period during which they were interned on land by the Japanese Government.

The libelants rely for recovery upon Article ·VIII of a collective bargaining agreement entered into as of August 1, 1941, between the Texas Tanker Officers Association and The Texas Company.

The respondent, alleging that the libelants have been fully paid, argue that any bonuses due the libelants were due in accordance with Maritime War Emergency Board Decisions; that these decisions by subsequent agreement of the parties replaced

Article VIII of the contract of August 1, 1941; and that the libelants have been fully paid in accordance with the relevant decision of that Board.

### Findings of Fact.

1. The libelants were members of the Texas Tankers Officers Association, an unincorporated association of licensed deck officers, including masters and licensed engineers employed on the American Flag ocean going vessels of the respondent, The Texas Company.

2. On March 30, 1942, the libelants signed shipping articles of the S.S. Connecticut at Port Arthur, Texas, for a voyage to Cape Town, South Africa. Libelant Mason signed on as first assistant engineer, Libelant Carroll signed on as chief officer (first mate). Each was to receive basic wages at the rate of $290 per month. The articles also provided as follows:

"A War Bonus Payable on this Voyage in Accordance with U. S. Maratime Commission Decisions."

3. There was no reference in the shipping articles to any collective bargaining agreement between The Texas Company and the Texas Tanker Officers Association.

4. The United States Maritime Commission did not issue any decisions relating to war bonuses for seamen or officers on ships.

5. The S.S. Connecticut was an American Flag ocean going vessel under time charter to the United States, acting through the War Shipping Administration, and was engaged in the general war effort of the United States on this voyage.

6. On March 31, 1942, the S.S. Connecticut with the libelants on board, sailed from Port Arthur, Texas bound for Cape Town, South Africa. While enroute, the vessel was torpedoed and sunk by enemy action on April 23, 1942. Libelants were there and then taken aboard a German raiding vessel in custody of the enemy for the purpose of internment. They remained on board that vessel and other enemy vessels to which they were transferred, until September 22, 1942. On that date, libelants were put ashore into the custody of the Japanese enemy and from then on were interned by the Japanese at divers places on land until liberated by the United States armed forces on or about August 15, 1945.

7. On August 1, 1942, the enemy vessels which were transporting libelants to a place of internment, put into Batavia, Java.

8. Following their liberation from internment, libelants were repatriated to the United States in divers vehicles of transportation, by land, air and sea. Libelant Mason arrived at San Francisco on October 20, 1945, and at Port Arthur, Texas, on October 26, 1945. Libelant Carroll arrived at San Francisco on October 6, 1945, and at New York October 26, 1945.

9. On November 2, 1945, libelant Carroll signed a statement of account with the respondent in the sum of $14,598.55. On November 16, 1945, the libelant Mason signed a like statement of account with the respondent in the sum of $14,265.69.

10. These accounts were stated and the amounts thereof paid to the libelants on the basis of and in accordance with the relevant Maritime War Emergency Board Decision. They included wages, but no 100% war bonus, for the period during which the libelants were interned on land by the Japanese.

11. Under the date of August 1, 1941, The Texas Company entered into a collective bargaining agreement with the Texas Tanker Officers Association, the duly authorized collective bargaining agent of the libelants, relating to recognition of the Union, working conditions, holidays, relief officers, overtime pay, vacation periods, war bonus, wages, grievance procedure and other mutual problems. This agreement was negotiated by John J. Collins, adviser of the Union, and T. E. Buchanan, general manager for respondent's Marine Department.

12. Article XIV of the agreement was as follows: "At the express request of the Association, this agreement shall become tentatively effective August 1, 1941, pending ratification by the membership of the Association. This agreement shall continue in force until July 31, 1942. Two (2) months prior to the expiration date thereof, either party to the agreement may advise the other of its desire to discuss a renewal, modification, or extension of the agreement,

in which event both parties shall negotiate in respect to such renewal, modification, or extension of the agreement, providing the Association continues to represent a majority of the licensed deck officers aboard the Company's vessels."

13. The provisions of the agreement, relating to war bonus are to be found in Article VIII thereof. The relevant parts of that Article are:

"1. Trans-Atlantic:

"On each Trans-Atlantic voyage on which a vessel enters a port east of 30 degrees West Longitude, a war bonus at the rate of Seventy-Five percent (75%) of his regular monthly wages (exclusive of 'emergency increase') will be paid to each Licensed Officer from and including the day when the vessel departs from the last port in the Western Hemisphere until and including the day the vessel thereafter arrives at a port in the Western Hemisphere; * * *

"3. General Provisions:

"(c) In the event of a total loss of the vessel due to hostilities or warlike operations, all licensed officers will be furnished transportation to a United States port and paid their full wages and war bonus until and including the day of arrival at such port.

"(d) Nothing in this Agreement shall prevent changes in this Section by mutual agreement of the Association and the Company."

14. A letter dated February 27, 1942, sent by John J. Collins, Adviser, Executive Committee, Texas Tanker Officers Association to T. E. Buchanan, Marine Department, The Texas Company, (respondent's exhibit B) stated that the Union had agreed to abide completely by decisions and clarifications of decisions issued by the Maritime War Emergency Board, and asked the respondent to "indicate whether or not you are abiding by or will abide by the complete Decisions and clarifications that already have been issued by the Maritime War Emergency Board?" It further asked "With respect to future decisions, modifications and clarifications emanating from the Maritime War Emergency Board would it be convenient to indicate your agreement to follow such Decisions, modifications or clarifications as soon as possible after they have been rendered by the Board? The Texas Tanker Officers Association will be glad to correspond with the Texas Company each time a Decision, modification or clarification is rendered, in order that the records in these matters may be kept clear."

15. By letter dated March 3, 1942, (attached to the Stipulation of Facts as Document 2(b)), Buchanan replied as follows:

"Dear Mr. Collins:

We are enclosing addendum, in duplicate, to our agreement of August 1st, 1941, which we consider it is necessary to execute in view of changing conditions.

You will note from the addendum that we have signified our willingness to abide by and, in fact, are already abiding by the decisions and clarifications heretofore issued by the Maritime War Emergency Board, which it is believed answers the principal point raised in your communication of February 27th.

As to our policy with respect to future decisions, modifications and clarifications, you can appreciate that we would first wish to know what these are before signifying our willingness to abide by them, and in this respect you may rest assured that action will be taken by us and you will be advised thereof as promptly as possible following future decisions, if any, of such Board."

16. Enclosed with this letter was a formal agreement signed The Texas Company, Marine Department, T. E. Buchanan, General Manager, which by its terms amended the agreement of August 1, 1941.

17. This formal amendment was never executed by any one representing the Union.

18. Some time in March, 1942, John J. Collins, who had previously acted for the Union in all of its negotiations with The Texas Company, entered the United States Navy.

19. The Texas Tanker Officers Association was a signatory to the Statement of Principles which resulted in the establishment of the Maritime War Emergency Board, and agreed to abide completely by

decisions and clarification of decisions issued by the Board.

20. The Texas Company was not a signatory to the Statement of Principles. However, by circular letter sent to Masters of Texas Company Ships, dated January 15, 1942, Buchanan informed them that as of December 7, 1942, on all voyages of American Flag tankers, war bonuses would be paid on the basis of Decision No 2 of the Maritime War Emergency Board. Also, in a letter dated March 5, 1942 to Masters and Chief Engineers of The Texas Company Ships, Buchanan listed the various decisions of the Maritime War Emergency Board issued to that time. I find that this was done to signify The Texas Company's intention to abide by such decisions.

### Discussion.

The libelants allege that they were entitled to a war bonus of $290 per month for the period of their internment on land by the Japanese under the provisions of the collective bargaining agreement executed by the Texas Tanker Officers Association and The Texas Company. The respondent claims that Article VIII of the collective bargaining agreement was deleted therefrom by mutual consent and that thereafter the decisions of the Maritime War Emergency Board were substituted therefor as the basis upon which war bonuses were to be paid.

It is agreed by the parties that the libelants were paid in full in accordance with the provisions of the applicable Maritime War Emergency Board decision. Thus, the only question to be determined is what agreement existed between the parties concerning the payment of war bonuses.

 Shipping articles constitute the contract of employment by which the ship and crew are bound. 46 U.S.C.A. § 676; The Seatrain New Orleans, 5 Cir., 127 F.2d 878. Since they are prepared by the master of the ship, any ambiguity in the language used should be construed liberally in favor of the seaman. The Catalonia, D.C., 236 F. 554; Agnew v. American President Lines, Ltd., D.C., 73 F.Supp. 944; Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; Williston on Contracts, Sec. 621. And as in the interpretation of any other contract where there is ambiguity, extraneous evidence is admissible to aid in the construction of ships articles.

 In the present case, the only reference in the shipping articles to the payment of a war bonus to the officers and crew is the following:

"A War Bonus Payable on this Voyage in Accordance with U. S. Maratime Commission Decisions."

Since the United States Maritime Commission did not issue any decisions relating to war bonuses of seamen or officers, this clause is ambiguous. It fails to state either the amount of war bonus payable or the conditions under which such a bonus would become payable, although it does show that the payment of war bonus was contemplated by the parties.

Since declaring the whole bonus provision void would enable the respondent who used the ambiguous language to benefit inequitably at the expense of the libelants who are wards of the admiralty, this court is constrained to use every effort to determine from the circumstances surrounding the signing of these articles just what was meant by that language. Especially is this so since it is agreed by both sides that the instant shipping articles were predicated upon the provisions of a collective bargaining agreement between The Texas Company and the bargaining agent of the libelants. The real substance of their dispute is merely as to what the terms of the collective bargaining agreement were at the time these articles were opened.

In the absence of any reference in the shipping articles to any collective bargaining agreement, the terms of any such agreement would ordinarily be immaterial and irrelevant in construing the terms used in the shipping articles. However, in the present instance, they must be examined for the purpose of construing the ambiguous clause relating to war bonus, since they shed some light upon the circumstances under which these shipping articles were signed and the previous course of dealings between the parties.

Under these circumstances, the question whether the collective bargaining agree-

ment of August 1, 1941 was formally amended insofar as it related to war bonus payments, is relatively unimportant. The real question for the court to determine is the meaning of the war bonus clause in the shipping articles in the light of the dealings between the parties under the conditions existing when those articles were signed. Thus, if the parties were working under an arrangement somewhat different in terms from the formal contract they had previously executed, such arrangement, even though not evidenced by a formally executed agreement, should carry great weight in construing the language of the shipping articles. In other words, the court must study all the relevant factors existing on March 30, 1941 to determine the meaning of the shipping articles.

For this purpose, the collective bargaining contract of August 1, 1941 is no aid whatsoever. The only bonus provisions applicable to a Trans-Atlantic voyage found in that contract are in Clauses 1 and 3 of Article VIII. Since the bonus mentioned in Clause 3 of Article VIII, is apparently the same amount of bonus provided for in Clause 1 of Article VIII, it is necessary only to consider Clause 1 of Article VIII.

That provision, heretofore set forth in my findings of fact, called for a completed voyage. That is, unless the ship entered a port east of 30° West Longitude, no bonus was payable. It did not provide, nor was it intended to provide for a situation where a ship was sunk on the way across to Europe or Africa. Nor, in my opinion, was it intended to provide for a situation where the officers were interned by the enemy, since in August, 1941, this country was not at war, and it was the duty of all warring nations to repatriate seamen of neutral nations. There was, therefore, no reason for such a contract to include any bonuses for the time spent in internment.

■ This court takes judicial notice that the United States became a belligerent early in December 1941, and that, at that time, the danger to shipping and crew members became much greater. At about that time, the Maritime War Emergency Board was established to settle disputes between shippers and their seamen as to wages, bonus payments and the like.

The Texas Tanker Officers Association became a signatory to the "Statement of Principles" and agreed to abide completely by the decisions and clarifications of decisions as to wages, bonus payments and the like, issued by the Maritime War Emergency Board. There is also evidence that The Texas Company, although it was not a signatory to the "Statement of Principles" and was a party to no formal agreement concerning those matters, indicated to the Texas Tanker Officers Association that it was abiding by and would continue to abide by the published decisions and clarifications of the Board, reserving the right to express its willingness or unwillingness to abide by each future decision at the time of its issuance. There is also evidence that The Texas Company notified its masters of this fact.

The fact that the representative of the Texas Tanker Officers Association never signed the proposed addendum to the contract of August 1, 1941, is I believe, immaterial and does not controvert the fact that the parties intended to be bound by those decisions. This proposed addendum was, in my opinion, intended only as a convenient written memorandum of a contract or agreement to which the parties considered themselves already bound.

■■ There is also the added fact which is entitled to some, but very little, weight under the circumstances, that the libelants signed statements of accounts and accepted payments based upon the relevant War Emergency Board Decision.

On the basis of all of these facts, I am of the opinion that by agreement of the respondent and libelants' agent for collective bargaining, war bonus payments were to be made in accordance with the Maritime War Emergency Board Decisions issued up to March 30, 1942, the date of the signing of the ships articles by the libelants.

In view of the fact that there were no United States Maritime Commission Decisions relating to the payment of war bonus and that consequently the use of that term in the shipping articles rendered the bonus provision ambiguous, I find that the reference to the United States Maritime Com-

mission Decisions was made through an error of the person preparing them.

I further find and conclude on all of the evidence, that the parties intended that the war bonus on the voyage was to be payable in accordance with the Maritime War Emergency Board Decision.

It being agreed that the libelants have been fully paid in accordance with the relevant Maritime War Emergency Board Decisions, they cannot recover in this action.

### Conclusions of Law.

1. The reference in the shipping articles to the "U. S. Maratime Commission Decisions" was erroneous and rendered the bonus provision of the articles uncertain and ambiguous.

2. Under the circumstances, the bonus provision in the shipping articles was not rendered void for uncertainty.

3. On the basis of my findings of fact, I find and conclude that the parties intended that a war bonus should be payable on the voyage of the S.S. Connecticut in accordance with Maritime War Emergency Board Decisions.

4. The libelants have been fully compensated according to their contract.

5. The respondent is entitled to judgment.

The Clerk will prepare a decree of judgment for the respondent.