**MASSETT et al. v. THE EXPLORER et al.**

**No. 1596.**

United States District Court
E. D. Louisiana, New Orleans Division.
March 20, 1950.

Walter E. Doane, George M. Ponder, New Orleans, Louisiana, for libelants.

McClendon & Wheeler, New Orleans, Louisiana, for respondent.

WRIGHT, District Judge.

This is an action in rem against the M/V Explorer alleging a cause of action of wages and damages. The vessel was claimed by Conrad G. Dyke as owner, and upon claimant's posting a bond in the amount of $8,500 the vessel was released to him. Mr. Dyke was out of the jurisdiction of the court at the time the seizure was effected and was never personally served. The action, therefore, is in rem against the bond.

Suit was filed under 28 U.S.C.A. § 837 [now § 1916] which permits the filing of suit without prepayment of costs. Libelants comprise all of the officers and members of the crew of the vessel, except the Master, Captain Lanier, during a voyage from New Orleans to Mexico and return. All of the libelants allege that an agreement for wages was made with Francis B. Ryan, charterer of the vessel, and all of the libelants except Mr. Fossier, allege that Francis B. Ryan agreed to pay the "going wage". Mr. Fossier is the only libelant who alleged an agreement for a specific amount. There were no written articles and no written contract of employment.

One of the libelants, Mr. Comisak, alleges that he is entitled to an additional payment of $315 for services as a night watchman for the period from April 7, 1948 to June 10, 1948, during which time he "remained and slept" aboard the vessel. The proof, however, indicates that Comisak was allowed to live aboard the vessel as a convenience to himself and not as a night watchman.

It appears that some time prior to June 10, 1948, Francis B. Ryan entered into an oral agreement with claimant for the use of the M/V Explorer. This agreement was reduced to writing on June 10, 1948, in the form of a bareboat charter whereby Captain Ryan agreed to pay claimant 50% of the earnings of the vessel during the charter period. Captain Ryan assumed the full obligation of manning and operating the vessel.

From approximately March 11 until approximately June 2, Captain Ryan, together with the libelants, worked on the vessel preparing her for a voyage to Mexico. During this time the M/V Explorer was flying the American flag and continued under such registry until June 4, 1948 when her registry was changed to Nicaraguan. Massett was the first of libelants to come aboard on about March 11; Mr. Fossier came aboard around March 31; Mr. Comisak and Mr. Boere were unable to state in their testimony the exact date they commenced work, but Mr. Boere stated in the libel that it was about the first day of May and Mr. Comisak stated in the libel that he commenced work on or about March 21.

The M/V Explorer sailed from New Orleans on June 11, 1948, without cargo. Her only port of call was Frontera, Mexico, where she took on a cargo of mahogany. She arrived back in New Orleans on June 25, 1948. Both Captain Ryan and Mr. Dyke testified that the venture had been unprofitable, and produced records of sums expended and received, showing a net loss of approximately $1,842. Captain Lanier testified that he and every one else aboard the vessel knew that the venture would be unprofitable as soon as loading at Frontera had been completed.

The libelants testified that their agreement with Captain Ryan was that they were to be paid wages at the American union rate. Captain Ryan testified, however, that under the agreement with the libelants no wages were to be paid unless the voyage was profitable. He further stated along with Captain Lanier and Mr. Dyke that the trip to Mexico of the M/V Explorer was a joint venture, but the evidence fails to support this conclusion. None of the requisites of joint venture was present in the agreement between Captain Ryan and the libelants. There was no accounting; no understanding as to participation in profits, except as above set out, and no voice in management for the libelants. It would appear from all the evidence that the verbal understanding reached between the parties amounted to nothing more nor less than an agreement to pay the libelants wages out of the profits of the voyage which agreement is not enforcible under Title 46 U.S.C.A. § 592.[1]

Claimant predicates his defense on The Lily, 9 Cir., 69 F.2d 898 stating that the facts in The Lily are completely analogous to the facts before this court. In The Lily there was an admitted joint venture and the only question presented was whether or not the fact that written articles were not signed for a voyage to Mexico made it incumbent upon the claimant to pay the libelants full American wages for the trip to Mexico. In the case at bar there is simply an agreement to pay wages out of profits from freight and Title 46 U.S.C.A. § 592 states that no right to wages shall be dependent on the earning of freight by the vessel and the seamen who would be entitled to demand and receive any wages if the vessel on which he has served had earned freight shall be entitled to claim and recover wages in spite of the fact that the voyage was unprofitable. Title 46 U.S.C.A. § 544[2] does not apply to the present case because the voyage to Mexico of the M/V Explorer was not "in the coastwise trade, * * *, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, * * *."

This case presents an unfortunate situation in which the owner and charterer of a vessel agreed to divide the profits from the use of the vessel. A crew was then engaged with the understanding that each member thereof was to be paid out of the profits of the voyage. The voyage was unprofitable and the seamen were paid nothing after working for over three months and subsisting themselves the greater portion of that time. Under the circumstances this court

1. Title 46 U.S.C.A. § 592. "No right to wages shall be dependent on the earning of freight by the vessel; but every seaman or apprentice who would be entitled to demand and receive any wages if the vessel on which he has served had earned freight, shall, subject to all other rules of law and conditions applicable to the case, be entitled to claim and recover the same of the master or owner in personam, notwithstanding that freight has not been earned. But in all cases of wreck or loss of vessel, proof that any seaman or apprentice has not exerted himself to the utmost to save the vessel, cargo, and stores shall bar his claim."

2. Title 46 U.S.C.A. § 544. "None of the provisions of sections 201–203, 541–543, 545–549, 561, 562, 564–571, 574, 577, 578, 591–596, 600, 621–628, 641–643, 644, 645, 651, 652, 662–669, 701–709, 711, 713 of this title shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage."

must adhere to the injunction of Mr. Justice Story in the case of Harden v. Gordon, Cir.Ct.D.Maine, Oct. Term 1823, 11 Fed. Cas. 480, No. 6047, 2 Mason 541, and cited with approval by Mr. Justice Black in Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239, 1942 A.M.C. 1645, 1650. The language of Mr. Justice Story in the Harden case eloquently outlines the proper attitude of courts towards the rights of seamen: " * * * Every court should watch with jealousy an encroachment upon the rights of seamen, because they are unprotected and need counsel; because they are thoughtless and require indulgence; because they are credulous and complying; and are easily overreached. But courts of maritime law have been in the constant habit of extending towards them a peculiar, protecting favor and guardianship. They are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner, as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees. * * *"

This court holds that the libelants are entitled to judgment in rem against the M/V Explorer in the sum of $6,930.59 with interest and costs.

Now, the Clerk of Court is directed to enter judgment in No. 1596 in Admiralty in favor of libelant Bernard Massett for 3 months 14 days wages ($2,236.70), 91 days subsistence ($637), less $35 advancement, creating a total claim and accumulated sum of $2,838.70; and in favor of libelant John H. Comisak for 3 months 3 days wages ($1,428.18), 83 days subsistence ($581), less $10 advancement, creating a total claim and accumulated sum of $1,999.18; and in favor of libelant Anthonius C. Boere for wages for 1 month 25 days ($844.46), 41 days subsistence ($287), less $10 advancement, creating a total claim and accumulated sum of $1,121.46; and in favor of libelant George Paul Fossier, Jr. for wages for 2 months and 25 days ($707.25) 72 days subsistence ($288), less $24 advancement, creat-

ing a total claim and accumulated sum of $971.25; with interest and costs.