**Huey E. THOMPSON,**
**Plaintiff-Appellant,**

v.

**BROWN & ROOT U.S.A., INC., et al.,**
**Defendants-Appellees.**

No. 87–2464
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 19, 1987.

Opinion on Denial of Rehearing
Dec. 3, 1987.

---

**12.** *See* Fed.R.Evid. 801.

**13.** *Armco Indus. Credit Corp. v. SLT Warehouse Co.,* 782 F.2d 475 (5th Cir.1986).

Donna Cywinski, McKenna & Cywinski, M. Dale Harvill, Houston, Tex., for plaintiff-appellant.

Mary Ellen Blade, Hubert Oxford, III, Benckenstein, Oxford, Radford & Johnson, Beaumont, Tex., for defendants-appellees.

Before GEE, GARWOOD and JONES, Circuit Judges.

PER CURIAM:

In September 1982, plaintiff Huey Thompson, a seaman, injured his back while carrying too heavy a load up a companionway; and on August 26, 1986, he executed a release in favor of the present defendants containing recitations that we set out in the margin.[1]

Ten days later the release, with an attached Agreed Motion for Judgment, was presented in an action that Thompson had filed in the Beaumont Federal Court against the defendants; and judgment approving the settlement by its ward was entered by that Court on September 11 of that year. By that time, however, Thompson had returned to the well.

On September 5, 1986, Thompson—represented by the same counsel as in the first case—filed a new action, in Houston Federal Court rather than in Beaumont, complaining "of the Defendants' failure to pay Plaintiff certain monies for vacation pay to which he was entitled, employee's supersavers account pay, and company contributions to employees' retirement and savings account, within the time required upon termination of Huey E. Thompson from employment on September 6, 1983." Thompson sought damages and penalties of another $1,000,000 for these claimed derelictions, plus attorneys fees, exemplary damages, and so on. On motion of the defendants, the Houston trial judge dismissed the follow-on action as frivolous and baseless in view of the terms of the release.[2]

On appeal to us, Mr. Thompson complains of the procedure followed by the trial court and asserts that its action consti-

---

1. The release, which is in affidavit form and covers eight pages, contains, among other things, recitations by Mr. Thompson that "As a result of my injuries, I have received surgery, been permanently disabled, *lost wages*, wage earning capacity suffered physical pain and mental anguish, incurred medical expenses, and *will continue to suffer from all these things in the future*" (emphasis added).

   It acknowledged receipt of $1,000,000, in exchange for which it released the defendants "and all others at interest herein, and each of the foregoing and their respective successors and assigns, *of and from any and all causes of action, debts, dues, sums of money*, accounts, reckonings, bills, specialties, covenants, contracts, controversies, agreements, provisions, variances, trespasses, damages, *claims and demands, suits and actions*, whether known or unknown, whether at law, in admiralty or in equity, whether under § 33 of the Act of Congress of 1920 known as the "Jones Act"; whether under Longshoremen & Harbor Workers' Compensation Act, 33 U.S.C.A. 901, 905(b), and whether for wages to the end of the voyage (earned or unearned), maintenance and cure, return transportation or indemnity, medical expenses, or *of whatever nature* which against the said BROWN & ROOT, INC., AND ASSOCIATED COMPANIES, BROWN & ROOT INTERNATIONAL, HIGHLANDS INSURANCE COMPANY, HALIBURTON COMPANY EMPLOYEES TRUST, and the D/B ATLAS I, their owners, operators, agents, officers and underwriters or any other person mentioned or referred to in this Release, *which I now have, ever had or may ever have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of these presents*, and particularly, but not in limitation of, any of the general terms of this Release *for all injuries, all illnesses and all consequences thereof, whether known or unknown*, sustained by me while I worked as a seaman and member of the crew of the D/B ATLAS I" (emphasis added).

2. The base motion was for transfer of the case to Beaumont and for Rule 11 sanctions.

tuted rendition of a summary judgment in the face of fact issues "as to the intention of the parties to the release." No contention is made, however, that the release is bogus or that the $1,000,000 consideration which it recites was not paid.

It may be that as to formality the procedure followed by the trial court strayed in some degree from the foot of the letter. There can, however, be no doubt at all that the parties and the court well knew that the defendants were seeking to dispose of this follow-on action on the ground that Thompson had already released the claims that it advanced. As we have noted, after the court indicated its intention to dismiss on that ground, the plaintiff briefed and argued its opposition to the court's proposed action, never disputing the release but rather contending that it did not extend to the claims advanced in this case. This was sufficient and fair notice to plaintiff.

As for substance, plaintiff's claim is that seamen's releases are subject to special scrutiny and that, in view of this circumstance, fact issues were made as to the intent with which the release was given. In particular, Thompson appears to contend that any claim not specified in a seaman's release is retained by him.[3] In the circumstances presented here, we cannot agree.

Laying down a mechanical requirement that every conceivable claim which a seaman may have be specified in a release in order to be effectively settled would be no service to seamen. The number of such conceivable claims is legion, and such a requirement might be so burdensome as to render seamen's releases of little, if any, value. If so, there will not be much of a market for them. In this case, all of the claims advanced by Thompson in his second

action had accrued three years or more before his release was given with the advice and assistance of counsel. Each was plainly a "consequence" of his injury and resulting disability. The general terms of the release which he gave plainly encompass these claims; and the consideration paid was adequate, indeed, handsome.

The judgment of the district court is AFFIRMED.

(ON PETITION FOR REHEARING)

Before JOHNSON, GARWOOD, and JONES, Circuit Judges.*

PER CURIAM:

IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby DENIED, and the prior decision of this Court herein is hereby adopted and reaffirmed.

Thompson's response to it did not dispute the authenticity of the release or the payment of the million dollar settlement. After the filing of a "Memorandum of Dismissal" by the court, the plaintiff filed a brief in opposition and orally argued his position to the court, which notified him that he deemed the brief a motion to reconsider. Later, the court entered a final judgment dismissing the action.

3. In support of this proposition, plaintiff advances *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942) and *Lewis v. Texaco, Inc.*, 527 F.2d 921 (5th Cir. 1975) (sic). That is not the holding of *Garrett*, which chiefly stands for the proposition that in

seamen's cases a state (Pennsylvania) court was required to apply the federal general presumption *against* the validity of a release rather than its own rule presuming a release's validity. Nor does *Lewis*—a split decision of the Second Circuit, not of ours—stand for such a mechanical proposition—rather for the general solicitude for seamen's rights with which their releases must be approached.

* Subsequent to the issuance of the panel's opinion, Judge Gee has determined to recuse himself. Judge Sam D. Johnson has been designated on this panel in place of Judge Gee for consideration of the petition for rehearing.