Jose PEREIRA, Plaintiff,

v.

BOA VIAGEM FISHING
CORPORATION,
Defendant.

Civil Action No. 97–11109–GAO.

United States District Court,
D. Massachusetts.

July 2, 1998.

Michael B. Latti, Carolyn M. Latti, Latti Associates, Boston, MA, for Plaintiff.

Thomas J. Muzyka, Arthur P. Skarmeas, Clinton & Muzyka, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

In this personal injury action for damages and "maintenance and cure" arising under the Merchant Marine Act of 1920 (Jones Act), 46 U.S.C.App. § 688, and general maritime law, the defendant Boa Viagem Fishing Corporation has moved for summary judgment on the ground that the plaintiff Jose Pereira previously gave the defendant a full release with regard to the subject matter of this suit. Because this Court determines that, as a matter of law, the release is valid, the defendant's motion is hereby GRANTED.

### Background

On August 21, 1995, Pereira was working on the fishing vessel BOA VIAGEM (owned by the defendant corporation) when the little finger on his left hand became caught in the backstrap chain as he was attempting to hook up the starboard side door, crushing the tip of this finger. Pereira was treated by a doctor for the injury over the next few months. Toward the end of November 1995, his doctor released him to return to "full active labor." He did so in December.

During the period of his recovery, Pereira met with Neil Stoddard, a representative of the defendant's insurer, who arranged for Pereira to receive maintenance and cure payments. Periera received a total of $1,695 in maintenance, representing a rate of $15.00 per day, from the date of the injury until his return to work. The insurer also paid Pereira's medical bills, which totaled $1,351.46. In addition, the insurer paid Pereira $1,740 in wage advances.

After Pereira returned to work, he had some discussions with Stoddard regarding the final settlement of his claims against the defendant. Pereira was not represented by a lawyer at the time. Stoddard originally

offered Pereira $2,000, which represented approximately the amount of Pereira's lost wages for the period of his disability. Pereira rejected the offer. Stoddard next offered $5,000, which Pereira also rejected. Pereira made a demand for $15,000, which the insurer rejected. Finally, Stoddard offered $10,000 in "new money," that is, in addition to the maintenance, cure and advances already paid, and Pereira, after some consideration of the offer, accepted it.

To consummate the settlement, the parties met at the office of Attorney Gordon Sykes, representing the insurer, who explained to Pereira the claims that he would be settling if he accepted the tendered sum and the significance of the release. The meeting was tape recorded, and a transcript of the recording is offered in support of the summary judgment motion. (Def's Mem. Supp. Summ. J. Ex. F). The plaintiff does not contest the authenticity or accuracy of the transcript.

Recognizing that Pereira was not represented by counsel, Sykes explained that he, Sykes, was not representing Pereira or looking out for his interests, but on the contrary was representing interests adverse to Pereira. He gave Pereira several opportunities to consult a lawyer of his own, both by offering to let him use the telephone and, more practically, by offering to adjourn the session so that Pereira could consult a lawyer if he wished. Sykes also offered to adjourn so that Pereira could consult his doctor about the likelihood of future medical expenses. Pereira's wife was also present, and Sykes gave her also the opportunity to participate in the discussions and to ask any questions about what the settlement involved. Pereira answered that he did not wish to adjourn or consult a lawyer or doctor. His answers also indicated that he understood the nature of the claims he was surrendering and the effect of the release he was being asked to sign. In the end, Pereira executed a general release in favor of the defendant (among others) and received a check for $10,000.

## Discussion

■ Seamen are "wards of the admiralty" and therefore

the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding.

*Garrett v. Moore–McCormack Co.*, 317 U.S. 239, 248, 63 S.Ct. 246, 87 L.Ed. 239 (1942). Where an unrepresented seaman has negotiated directly with a defendant's insurer, as here, the Court of Appeals for the First Circuit has interpreted the Supreme Court's pronouncement to mean that

the [defendant's insurance] agent was under an obligation to bring home to the plaintiff an understanding of the rights he was giving up in exchange for the settlement offered. Otherwise, the plaintiff would necessarily not be in a position to make an intelligent decision as to whether the offer should be accepted. At the very least he should have been told that he had an unbeatable right of action under the maritime law for maintenance and cure, not dependent on proof of negligence; and that in addition he had, under the Jones Act, a right to maintain an action at law for damages for injuries resulting from the negligence of any of the officers or employees of the defendant, in which action the amount of recovery was not subject to statutory maximum limits . . . .

*Bay State Dredging & Contracting Co. v. Porter*, 153 F.2d 827, 833 (1st Cir.1946). If a seaman establishes a genuine issue of material fact concerning the validity of procurement of his release of a Jones Act claim, the issue is to be decided by a jury. *Durden v. Exxon Corp.*, 803 F.2d 845 (5th Cir.1986).

■ Here there can be no genuine issue of fact whether Pereira signed the release "freely, without deception or coercion, and . . . with full understanding of his rights." *Garrett*, 317 U.S. at 248, 63 S.Ct. 246. The transcript of the meeting at which Pereira signed the release establishes that Sykes explained to Pereira the legal and practical consequences of the release, including specif-

ically that it would bar future claims by Pereira against the released parties. Sykes summarized the claims Pereira would have under the Jones Act and the doctrine of unseaworthiness. It is true, as Pereira now objects, that the summary was not done with textbook precision, but it certainly conveyed to Pereira that he was surrendering potentially valuable claims in exchange for the settlement amount. There is really no doubt of that. Contrariwise, it is highly doubtful that more precise description of legal concepts—such as the quantum of proof necessary to establish negligence in a Jones Act case—would have added materially to Pereira's understanding of the significance of the release he was signing.

Despite the plaintiff's present assertion to the contrary, Sykes specifically advised Pereira that he was also surrendering claims for future payments for maintenance and/or cure—"unbeatable" rights, as *Bay State Dredging* says—and emphasized as well that he was generally surrendering the right to seek compensation for *all* future claims. Importantly, Sykes told Pereira that he was also surrendering the right to have his claims determined, and any damages set, by a jury of people like himself. Throughout, Pereira indicated, without uncertainty or equivocation, that he understood what he was giving in exchange for the settlement payment. Pereira's deposition testimony confirms these conclusions.

The procedure was also entirely free from any "deception or coercion." Sykes repeatedly asked Pereira if he wanted to seek legal, or even medical, advice before committing to the settlement. Pereira repeatedly said he did not want to do so. Mrs. Pereira participated with her husband, and Sykes even asked her if she had any questions about what was transpiring.

Finally, the settlement amount itself was the product of genuine negotiation between Stoddard and Pereira. The evidence indicated that the injury healed to the point where the doctor cleared Pereira for "full active labor." Where there was no evidence that Pereira suffered permanent impairment to any significant degree or any level of disability, and where his total medical expenses were about $1,350, a settlement in the sum of $10,000 was not inadequate to support the release, as a matter of law.

In sum, the record on the present motion shows clearly that the plaintiff knew what he was doing in accepting the settlement amount in exchange for a release of all claims against the defendant. On the evidence presented, no reasonable jury could conclude otherwise.

The law could preclude a seaman from giving a release at all, and require that all claims be tried. Or it could recognize only those releases given by seamen who are actually advised by counsel. It does neither. The law is solicitous of seamen, but it does not prevent them from entering into informed and voluntary settlements and from giving binding releases in connection therewith. In this case, there can be no genuine dispute that that is what Pereira did. He may now wish he had made a different choice, but second thoughts are not a reason for undoing an agreement that was proper and valid when the parties concluded it.

Pereira's release must be held binding. That being so, the defendant is entitled to judgment in its favor as a matter of law.

Defendant's motion for summary judgment is hereby GRANTED.