MORALES et al. v. MOORE–McCORMACK LINES, Inc.

No. 1125.

United States District Court
S. D. Texas, Houston Division.

Jan. 9, 1953.

Milton Schwartz, Houston, Tex., for libellants.

Royston & Rayzor, M. L. Cook, Houston, Tex., for respondent.

KENNERLY, Chief Judge.

Each claiming a bodily injury on *May 6, 1950,* from fumigants or disinfectants in wheat on board the Steamship Mormacmoon, alleged to have been owned and operated by respondent, libellants, who claim to have been longshoremen working with such wheat, filed this suit *October 31, 1952,* two years and nearly six months after the alleged injuries, seeking to recover damages therefor. Apparently they have received compensation from their employers under the Longshoremen's and Harbor Workers' Compensation Act, Title 33, U.S.C.A. § 901 et seq. Respondent has filed Exceptions, claiming laches on the part of libellants in the filing of such suit. This is a hearing under Local District Court Rule 25 of such Exceptions.

■ 1. The applicable rule is correctly stated in a case in this Court.[1] In such case, it is said:

"Courts of Admiralty, in applying the doctrine of laches, will customarily follow the analogy of the State Statute of Limitation, and if the claim would be barred under such Statute, will hold the claim barred in Admiralty unless the claimant shows special circumstances that excuse the existing delay. Further, the rule is that it will be presumed that delay in bringing suit caused injury to the party sued unless the contrary is shown."

The applicable Texas Statute is the Texas Two Year Statute of Limitation[2], Article 5526, Vernon's Texas Civil Statutes.

Libellants' pleadings are entirely silent on the question of whether there be special circumstances which excuse their delay in bringing the suit. I conclude that Respondent's Motion to Dismiss should be granted. Kane v. Union of Soviet, 3 Cir., 189 F.2d 303; McGrath v. Panama Ry. Co., 5 Cir., 298 F. 303; Redman v. United States, 2 Cir., 176 F.2d 713; McChristian v. Lykes Bros. S. S. Co., D.C., 94 F.Supp. 149.

2. While libellants, as stated, have not set forth in their pleadings any reasons for the delay in filing this suit, nor have they answered Respondent's Motion to Dismiss, they have filed a Brief in which they set forth matters which they claim excuse the delay. It is I think not sufficient to bring forward such matters only in their brief, but I have considered same. They say (italicising mine):

"In the instant case, the delay has neither been unreasonable nor inex-

---

1. The case is McChristian v. Lykes Bros. S.S. Co., D.C., 94 F.Supp. 149, 150.

2. Article 5526 of Vernon's Texas Civil Statutes is as follows:
"Art. 5526. Actions to be commenced in two years
"There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:
"1. Actions of trespass for injury done to the estate or the property of another.
"2. Actions for detaining the personal property of another, and for converting such property to one's own use.
"3. Actions for taking or carrying away the goods and chattels of another.
"4. Actions for debt where the indebtedness is not evidenced by a contract in writing.
"5. Actions upon stated or open accounts, other than such mutual and current accounts as concern the trade of merchandise between merchant and merchant, their factors or agents. In all accounts, except those between merchant and merchant, as aforesaid, their factors and agents, the respective times or dates of the delivery of the several articles charged shall be particularly specified, and limitation shall run against each item from the date of such delivery, unless otherwise specially contracted. Acts 1841, p. 163; G.L. vol. 2, p. 627.
"6. Action for injury done to the person of another.
"7. Action for injury done to the person of another where death ensued from such injury; and the cause of action shall be considered as having accrued at the death of the party injured. Acts 1897, p. 12; Acts 1841, p. 163; Acts 1852, p. 128; P.D. 4604; G.L. vol. 10, p. 1006; G.L. vol. 2, p. 627, G.L. vol. 3, p. 1006.
"8. Actions of forcible entry and forcible detainer."

cusable. Libellants were exposed to poisonous fumes of carbon tetrachloride. Medical diagnosis of their cases was reported as 'subacute toxic hepatitis due to gas poisoning.' Libellants were confined and disabled for periods ranging from three weeks to five months, depending on the severity of each particular case. At the end of those periods, libellants were diagnosed as completely recovered and were informed they could resume normal duties and activities. In view of these circumstances, libellants were led to believe that their cases were closed and, since they had received compensation under the Longshoreman's and Harbor Workers Compensation Act, they believed that nothing further could or had to be done. However, it is a well known medical fact, and so reported in many authoritative medical texts, that toxic hepatitis has latent characteristics. Hepatitis is degeneration of liver cells due to the action of toxic agents. Regeneration of these cells occurs gradually, over a period of many, many years, and while an individual with hepatitis may be diagnosed as 'cured', chronic poisoning results from daily exposure to quantities even too small to produce acute symptoms of hepatitis.

*"During the Spring and Summer of 1952,* much emphasis was placed on insecticides along the waterfront, aboard ship, and throughout the residential and industrial areas of Galveston. This was necessary because of the existent poliomyelitis epidemic. *As a result, libellants were continually being exposed to toxic agents and they began to feel ill. However, because of their belief that their former ailment had been completely 'cured', they thought little of their discomfort. In the fall of 1952, libellants began to experience all the symptoms of hepatitis again and this diagnosis was confirmed by consultation with their private physicians."*

If libellants as they say "began to feel ill" during the Spring and Summer of 1952, it was negligence for them to wait, and they were guilty of laches in waiting, until the "fall of 1952" to consult their "private physicians" and until October 31, 1952, to file this suit.

3. In their brief, libellants also say (italics mine):

"In addition to the above facts which negative unreasonable and unexplained delay, Libellants were ignorant of their rights concerning third party action. Six of the Libellants are Latin Americans and all nine Libellants have had very little education and scarcely read or write. Their association with the Deputy Commissioner of Labor who administers the Longshoreman's and Harborworkers Compensation Act was limited only to a determination as to the extent and length of disability. The Deputy Commissioner is not compelled under the Act to advise claimants of their possible rights concerning third party actions. Further, the Deputy Commissioner advised the writer of this brief personally that he does not advise claimants concerning third party action under Sec. 923 of the Act because those are not the facts he develops in his inquiries and determinations. A similar response was obtained from the Compensation Insurance Carrier.

"In connection with the above, Libellants consulted the writer *in September 1952,* and requested the re-opening their compensation claims. At that time, Libellants had not the remotest idea that third party action was involved. In discussing their compensation claims, the writer elicited facts from them which indicated the possibility of third party action. This was the first time they knew or had heard about that possibility."

But after hearing about the matter of claims against third parties, they waited until *October 31, 1952,* a period of from thirty to sixty days, before filing this suit.

It being clear that libellants have been guilty of laches in filing this suit and prosecuting their claim, Respondent's Motion will be granted.

Let appropriate Order be drawn and presented.