**Petition of ESSO SHIPPING CO.**

**THE ESSO SUEZ.**

**THE ESSO GREENSBORO.**

**No. 1058.**

United States District Court
S. D. Texas, Houston Division.

March 16, 1954.

Baker, Botts, Andrews & Parish (W. C. Harvin), Houston, Tex., and Kirlin, Campbell & Keating (Joseph M. Cunningham, Bronxville, and Walter X. Connor), New York City, for petitioner, Esso Shipping Co.

Mandell & Wright (Arthur J. Mandell), Houston, Tex., for claimant, Raymond Richards.

KENNERLY, Chief Judge.

On April 20, 1951, about 4:20 A. M., there was a collision in the Gulf of Mexi-

co between the Steamship Esso Suez and the Steamship Esso Greensboro. Both were oil tankers and were owned and operated by the Esso Shipping Company. Many of the officers and members of the crew on both vessels met death or were injured. There was heavy property damage. There followed numerous claims for damages against the vessels and the Esso Shipping Company.

Moving under the Statute and Rules, Title 46 U.S.C.A. §§ 183 to 189, and Admiralty Rule 51 et seq., 28 U.S.C.A., the Esso Shipping Company (for brevity called petitioner), on *October 4, 1951,* filed in this court its petition for exoneration from, and limitation of liability as to, the claims of all of such persons. On such date, the court by order required all such claims to be filed herein and fixed *December 1, 1951,* as the date by which all such claims should be filed. Later by several orders the court enlarged the time for filing claims to *February 15, 1952.* On *March 18, 1952,* petitioner Esso Shipping Company was duly awarded default judgment, cutting off the claims of all persons whose claims had not been filed within the time fixed.

On *October 12, 1953,* two years and five months after the collision and one year and six months after the expiration of the time fixed by the court for filing claims, Raymond Richards (for brevity called claimant) filed a motion herein, praying to be allowed to file and prosecute a claim for damages against such vessels and Esso Shipping Company. He alleges that before, and at the time of, such collision, he was a seaman on the Esso Suez, and that he was injured in such collision, for which he claims damages. The Shipping Company filed in answer to such motion an affidavit of its attorney, with exhibits attached, in which it combats such motion on the ground that claimant was guilty of laches and inexcusable delay in presenting his claim, etc.

The nature of claimant's claim is stated in the margin.[1] This is a hearing under Local District Court Rule 25 of claimant's motion.

1: No questions are raised as to the regularity of these proceedings nor is it disputed that the claimant had notice thereof.

■ Under the facts hereinafter pointed out, claimant does not show good cause for failure to present his claim within the time fixed by the court, but clearly shows that he was guilty of laches and that his delay was inexcusable.

The rule is thus stated in In re Eastern Dredging Co., D.C., 159 F. 549, 551:

"In a proper case, the court may and will allow damage claims to be presented after the time fixed by the monition has expired. There was such an exercise of the discretion of the court in favor of these petitioners in the proceedings upon the petition filed by the owner of the ferryboat. See the opinion in that case, dated December 18, 1906. There

---

1. Claimant says in his pleadings:

"That on or about the 20th day of April, 1951, and for sometime prior thereto, he was employed as a Machinist on the S.S. Esso Suez; that at that time the S.S. Esso Greensboro collided with the S.S. Esso Suez, and by reason of such collision caused and brought on by the unseaworthiness of the S.S. Esso Suez and the S.S. Esso Greensboro, and the negligence and fault of the owner, the petitioner Esso Shipping Company, and/or its agents, servants, and/or employees in charge of the S.S. Esso Suez and the S.S. Esso Greensboro, and without fault on the part of the said Raymond Richards, the said Raymond Richards suffered serious and painful injuries, which injuries caused him extreme and agonizing pain and mental anguish.

"That as a result of the injuries sustained, as above alleged, by and through the negligence and unseaworthiness of the S.S. Esso Suez and the S.S. Esso Greensboro brought about through the fault of the petitioner and/or its servants, and/or agents in charge of said vessels, claimant suffered serious and severe disability and injuries, extreme pain, suffering and mental anguish, all to his damage in the sum of Twenty-five Thousand Dollars ($25,000.00), no part of which has been paid."

was such an exercise of the discretion of the court in The Argus (D. C.) 100 F. 143. But while a damage claimant who has not had a fair opportunity to appear may be allowed to file his claim late, as, for example, when through force of circumstances it has not been reasonably possible for knowledge of the proceedings to reach him, or when, though he has had notice, his appearance has been delayed through accident or mistake, and while this may be more readily permitted so long as none of the steps have been taken which are based on the assumption that all parties are in court who wish to be heard, these claimants have no such claim upon the indulgence of the court."

Other cases are The James Sheridan, D.C., 73 F.Supp. 739, 740; In re Agwi Nav. Co., 2 Cir., 89 F.2d 11; Tesoriero v. A/S J. Ludwig Mowinckels Rederi, D. C., 113 F.Supp. 544. Other cases having same bearing on the matter are McChristian v. Lykes Bros. S. S. Co., D.C., 94 F. Supp. 149; Kane v. Union of Soviet, D. C., 89 F.Supp. 435, Id., 3 Cir., 189 F.2d 303. McGrath v. Panama R. R. Co., 298 F. 303; Redman v. U. S., 5 Cir., 176 F.2d 713; Aetna Cas. & Sur. Co. v. Rhine, 5 Cir., 152 F.2d 368; Pacific Employers Ins. Co. v. Oberlechner, 161 F.2d 180; The Sydfold, 2 Cir., 86 F.2d 611; Morales v. Moore-McCormack Lines, Inc., D. C., 109 F.Supp. 585, Id., 5 Cir., 208 F.2d 218. The cases cited by claimant do not hold to the contrary.[2]

2: Looking now to the facts shown by the record which claimant insists excuse his delay in filing his claim within the time fixed by the court.

(a) Claimant sets forth in his affidavit that at the time of the collision, he had been employed on the Esso Suez for approximately one year. That he was on the Esso Suez and was asleep at the time of the collision. That when he awoke, his room was filled with fire and smoke, and that his right hand was burned. That on the vessel's arrival at Mobile, Alabama, a physician bandaged his hand. Nothing further is shown regarding the injury to his hand. Apparently it was not a serious injury, and presumably he quickly recovered therefrom. Clearly the injury to his hand does not excuse his delay.

(b) In such affidavit, claimant says:

"Since the collision I had been extremely nervous and was unable to sleep but the physician claimed that it was to be expected that this condition would arise and that it would soon pass. I refrained from suing the Esso Shipping Company, my employers, as I had considered myself fortunate to escape with slight permanent scars on my right hand and I did not wish to jeopardize my job with the company. However several months after the collision my nervousness worsened and I was told by the United States Public Health Service to change ships. Thereafter I was transferred at my request to the S.S. New Haven.

"My nervousness and inability to sleep prompted both my personal physician and the United States Marine Hospital at Staten Island, N.Y. to declare me unfit for sea duty, as evidenced by the certificates annexed hereto."

Attached to the affidavit, there are four exhibits, being four certificates (two of which are apparently duplicates), showing purported diagnosis of claimant's physical condition by physicians. They are dated in *August and September 1953*, more than two years

2. Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; Loverich v. Warner Co., 3 Cir., 118 F.2d 690. Pan American Trading Co. v. Franquiz, D.C., 8 F.2d 500. The Adour, D.C., 21 F.2d 858. The Fulton, 2 Cir., 54 F. 2d 467. Christianson v. Western Pacific Packing Co., D.C., 24 F.Supp. 437. Matt Wilson v. Edwards Transportation Co., D.C., 120 F.Supp. 742

after the collision.[3] Apparently the New Haven, mentioned in the affidavit, was owned and operated also by the Esso Shipping Company.

Assuming that the physical condition of claimant was as stated, it is clear that it did not prevent him from being active. He worked for the Esso Shipping Com-

3. The four Certificates are as follows:

"Department of Health, Education and Welfare      Sep 30, 1953
Abstract from clinical record      Public Health Service
Name of patient: Raymond Richards.      Class of Beneficiary: A.S.
Register No.: Outpatient.      Address: 3060 Edwin Avenue, Fort Lee, N.J.
Date of Birth: 9/20/17.      Further identification: Z–767071
Treatment received: Out-patient on 9/1/53 and 9/15/53
Instructions—Include (1) History—how, where, and when disability occurred; (2) Examination—pertinent physical, laboratory, and X-ray findings; (3) Diagnosis; (4) Operations; (5) Condition on discharge—duty status, degree of recovery anticipated, and expected date.
9/1/53—Patient stated that about two years ago he was in a tanker collision. Since that time he has had difficulty in sleeping.
     Physical examination: Weight 158      Blood pressure 130/80
     Heart, chest and abdomen negative.      Neurological negative.
     Imp: No organic disease
9/15/53—Examination reveals patient has post-traumatic neurosis. Patient is unable to return to sea duty. Patient advised shore duty only.
To: Name and address to whom sent
     Mr. Saul Sperling—61 Whitehall Street, New York City
From: Name and address of USPHS Hospital: Staten Island 4, N.Y.
Date 9/23/53
Signature of medical officer or medical record librarian
     S. S. Henkin      Stephen S. Henkin,
     Sanitarian (R)
     Chief, Medical Record Section."

"Trafalgar 6–4057      Reg. No. 25844.      Christopher A. Scarano, M.D.
422 East 116th Street New York 29, N.Y.      Office Hours: 12:30 to 2 PM 6:30 to 8 P.M. Except Thursday. Saturday by appointment.
Name Raymond Richards      Age 35 yrs.      Address 350 East 120th
date 8/31/53 Sept. 28, 1953
This is to certify that I am attending Mr. Raymond Richards for an acute nervous condition brought on by an accident he had on board a ship about 2 years ago. This condition is aggravated by being on ships and therefore I strongly recommend that Mr. Richards be placed on shore duty.
     "C. A. Scarano M.D."

"Medical Report of duty status
Name: Raymond Richards      Outpatient: Date 9/16/53
Disposition: Pt. is not to return to sea. Fit for shore duty.
Remarks: Pt. is leaving sea because of nervous condition. Fit for shore duty.      Psychiatry.
Name and location of hospital or clinic:
U. S. Public Health Service Hospital, Staten Island 4, N.Y.
Signature of medical officer or medical record Librarian:
R. M. Silberstein.      Date: 9/16/53."

"Department of Health, Education and Welfare      Sep 30, 1953
Abstract from clinical record      Public Health Service
Name of patient: Raymond Richards.      Class of Beneficiary: A.S.
Register No.: Outpatient.      Address: 3060 Edwin Avenue, Fort Lee, N.J.
Date of Birth: 9/20/17.      Further identification: Z–767071
Treatment received: Out-patient on 9/1/53 and 9/15/53
Instructions—Include (1) History—how, where, and when disability occurred; (2) Examination—pertinent physical, laboratory, and X-ray findings; (3) Diagnosis; (4) Operations; (5) Condition on discharge—duty status, degree of recovery anticipated, and expected date.
9/1/53—Patient stated that about two years ago he was in a tanker collision. Since that time he has had difficulty in sleeping.
     Physical examination: Weight 158      Blood pressure 130/80
     Heart, chest and abdomen negative.      Neurological negative.
     Imp: No organic disease

pany to August 5, 1953. It did not prevent him from filing and presenting his claim here, and does not excuse his delay.

Clearly any reasonably prudent person with the information that claimant had, both about his physical condition and about these proceedings, would have seasonably filed his claim. Morales v. Moore-McCormack Lines, Inc., supra.

(c) Claimant also says in his affidavit that he did not file his claim because he did not want to jeopardize his job with the Esso Shipping Company.

It may be doubted whether this statement is frankly made, when it is considered that it is shown in the Esso Shipping Company's answer to claimant's motion that between the time of the collision and the time that he left the employ of the Esso Shipping Company, he claimed to have sustained other injuries and presented claims therefor to the Esso Shipping Company.

(d) When the affidavit, etc., of petitioner, Esso Shipping Company, is considered, there is still less to support claimant's motion.

Reference is made to a statement made by claimant on April 21, 1951, the day after the collision. Also later supplemental statements made by him—September 13, 1951, and September 26, 1951 —chiefly with respect to the claim or claims which he had against Esso Shipping Company which arose subsequent to the collision. Also statements made in connection with a final settlement with Esso Shipping Company in June 1953.

In the statement of April 21, 1951, he describes his injuries received in the collision as "2 blisters right hand rec'd in a place and situation unknown. Other-

wise OK." Neither in this statement nor in his later statements does he mention the physical condition now complained of in his claim, which if it existed at all must have existed when all the later statements were made.

(e) Whatever may be said with respect to whether the releases signed by claimant after the time of the collision would release the claim which he is now asserting, the fact that claimant was willing to sign such releases, which *might* include damages received in the collision, is a circumstance causing doubt about the merits of his present claim and his explanation for his delay in filing it.

■■ 3: Not only does claimant fail to show excusable delay in filing his claim, but he fails to show that the Esso Shipping Company will not be injured or prejudiced by such delay. The rule is correctly stated in McChristian v. Lykes Bros. S. S. Co., D.C., 94 F.Supp. 149, 150,[4] as follows:
as follows:

"Courts of Admiralty, in applying the the doctrine of laches, will customarily follow the analogy of the State Statute of Limitation, and if the claim would be barred under such Statute, will hold the claim barred in Admiralty unless the claimant shows special circumstances that excuse the existing delay. Further, the rule is that it will be presumed that delay in bringing suit caused injury to the party sued unless the contrary is shown."

Claimant has shown nothing to overcome the presumption that his delay has caused injury to petitioner. The record shows that the contrary is true. In these

---

9/15/53—Examination reveals patient has post-traumatic neurosis. Patient is unable to return to sea duty. Patient advised shore duty only.
To: Name and address to whom sent
    Mr. Saul Sperling—61 Whitehall Street, New York City
From: Name and address of USPHS Hospital: Staten Island 4, N.Y.
Date 9/23/53
Signature of medical officer or medical record librarian
    S. S. Henkin        Stephen S. Henkin,
                    Sanitarian (R)
                    Chief, Medical Record Section."

4. See also Morales v. Moore-McCormack Lines, Inc., supra, and other cases there cited.

proceedings, several hundred claims of officers and members of the crew of both the Esso Suez and the Esso Greensboro and their survivors have been presented to this Court. All have been compromised and settled by Esso Shipping Company, except two or three. No doubt Esso Shipping Company was partly influenced in settling such claims in order to be relieved of the trouble and expense of bringing before the court or taking the depositions of hundreds of witnesses. After this long lapse of time, it is clear that many of the witnesses, being seafaring men, have scattered throughout the world and some perhaps have died. Clearly Esso Shipping Company is not in the position to meet claimant's claim that it would have been in had claimant's claim been filed within the time fixed.

In claimant's brief, I find this language:

"In view of the circumstances existing in this case, how can Petitioner, by reason of such delay, have been induced to change its position greatly to its disadvantage or be prejudiced by it. The facts surrounding the collision between the Esso Suez and the Esso Greensboro are now fully and completely developed before this court. Moreover, Counsel for Petitioner has in open Court stated to your Honor that the collision between the Suez and the Greensboro occurred by reason of negligence of the masters of these respective vessels."

While it is true that all the evidence in the claims of many persons who are claiming salvage has been heard, and the case argued and briefed, and is now under submission, I know of no agreement or stipulation in *this* case that anything in the enormous record in the salvage case is to be considered here. Even if there be a stipulation in the salvage case to the effect that such collision was caused by the negligence of the Masters of the respective vessels, it does not necessarily follow that such negligence was a proximate cause of claimant's injuries, if any.

From what has been said, it follows that claimant's motion to file his claim should and will be denied. Let appropriate order be drawn and presented.