**Louis McDANIEL, Libellant,**

v.

**GULF AND SOUTH AMERICAN STEAM-
SHIP COMPANY, Inc., Respondent.**

**No. 1204.**

United States District Court
S. D. Texas, Houston Division.

Aug. 2, 1954.

————◆————

Mandell & Wright and Arthur J. Mandell, Houston, Tex., for libellant.

Royston & Rayzor and M. L. Cook, Houston, Tex., for respondent.

1. The Texas Two-Year Statute of Limitation is as follows:

"There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not

KENNERLY, District Judge.

It is claimed in libellant's Second Amended Libel that on or about *February 13, 1949,* libellant was injured while employed as a longshoreman by the Texas Star Stevedoring Company (for brevity called Stevedoring Company), and while engaged at the Port of Houston in loading and/or unloading the Steamship "Gulf Merchant", owned and operated by respondent, Gulf and South American Steamship Company, Inc. (for brevity called Steamship Company). Respondent claims in its brief that Stevedoring Company carried compensation insurance for its employees, including libellant, with the Texas Employers' Insurance Association (for brevity called Association) under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. It also claims that compensation benefits under such Act, aggregating $9,485, were paid to libellant by Association. That electing *June 8, 1953,* to proceed against respondent for damages for such alleged injury, this suit was filed *July 15, 1953,* approximately 4 years and 5 months after the date of such alleged injury.

Respondent has filed exceptions to such Second Amended Libel, and this is a hearing on such Exceptions under Local District Court Rule 25.

1: Respondent excepts to such Amended Libel on the ground, among others, that it shows on its face that the Texas Two-Year Statute of Limitation,[1] adopted by this Court by analogy, bars his suit at law, and that there were and are no exceptional circumstances or equitable reasons why it should not do so. The rule is clearly stated and the cases cited and discussed in Morales v. Moore-McCormack Lines, D.C., 109 F. Supp. 585, Id., 5 Cir., 208 F.2d 218.

Attached to libellant's Second Amended Libel, there are certain exhibits show-

afterward, all actions or suits in court of the following description:

꙳ * ꙳ * *

"Action for injury done to the person of another." Vernon's Ann.Civ.St.Tex. art. 5526.

ing various reports of physicians made with respect to libellant's claim for compensation under the Longshoremen's and Harbor Workers' Compensation Act, and describing the physical and mental condition of libellant from February 14, 1949, the day after the alleged injury, down to May 13, 1953, approximately two months before the filing of this suit. There is also an undated affidavit of Ross Roebuck attached to such Amended Libel. All these are considered as a part of libellant's Amended Libel.

Is libellant entitled to recover under the allegations contained in his Second Amended Libel, including such exhibits?

The answer is found by an examination of the reports of the physicians, etc. so attached to libellant's Second Amended Libel:

(a) The reports of Dr. I. S. McReynolds, dated February 14, 1949, and March 3, 1949, are convincing that libellant was in such physical and mental condition that he was not able nor required to file this suit against respondent for damages for his alleged injury before and up to March 3, 1949, but that his condition was improving. This improvement seems to have continued, and Dr. McReynolds' Report of June 6, 1949, indicates that libellant had gone home from the hospital, etc. A report dated November 2, 1949, by Dr. F. Keith Bradford seems to be a summing up of the history of libellant's case from the time he was injured up to November 2, 1949. Perhaps leaning towards libellant, I would say that he was not able nor required to file this suit before *November 2, 1949*.

(b) The next report is dated *June 12, 1950*, by Dr. John E. Skogland. He details an examination given to libellant at his office on *June 7, 1950*. I particularly refer to the following wording in Dr. Skogland's report, showing the condition of libellant with respect to working:

"Although attending to chores about home and helping occasionally in a cafe, he has not felt able to resume steady work. He explains his failure to get back to work in part on basis of symptoms mentioned in the preceding paragraph and also because of sequelae to fractures in his lower extremities."

If there was any examination of libellant by a physician between *June 12, 1950*, and *October 8, 1952*, it is not shown by the record. Presumably there was none. On October 8, 1952, there was an examination of libellant and a report by Dr. Bradford. Libellant was at that time working and had been working for Brown & Root since *December of 1951* in a job as porter. It is stated in such report that prior to going to work for Brown & Root, he had done some light work in a garage for about a year. I quote (italics mine):

"*This patient has worked for Brown and Root since December of 1951 in a job as porter. He cleans offices after hours and has no heavy work to do. Prior to accepting this job he had done some light work in a garage for about a year. His work has been satisfactory, but he has been easily disturbed by the presence of other people and by little incidents which would not normally bother him.*"

If libellant went to work in December 1951 for Brown and Root, and prior to that time he had worked for a year in a garage, he doubtless went to work in the garage about *December 1950*. Whatever may have been libellant's condition on June 12, 1950, it is clear that from the time he went to work in the garage (December 1950) on down, he was in such physical and mental condition as to be mentally and physically able to bring this suit. The Texas Two-Year Statute of Limitation began to run February 14, 1951, and there was a period of approximately two months between the time libellant went to work in the garage and February 14, 1951, during which time libellant was able to file this suit.

The view that libellant was able to file this suit as early as December 1950 is rendered more certain by the report of Dr. A. Hauser, dated March 16, 1953,

and the report of Dr. F. Keith Bradford, dated May 13, 1953.

Whatever may have been libellant's previous condition, it is certain he was on those dates (March 16 and May 13, 1953) physically and mentally able to bring this suit, but he did not bring it until July 15, 1953, more than two months later.[2]

Whether libellant was physically and mentally able to file this suit after December 1950, two years and seven months before the suit was filed, or since March 16, 1953, or May 13, 1953, or June 8, 1953, from one to four months before this suit was filed, is not material. Whichever is the correct time, libellant's suit comes too late under the cases cited above and the authorities discussed therein.

Respondent's Motion to Dismiss will be sustained and libellant's suit dismissed.

Let decree be drawn and presented.

2. It is shown by the notice of election to sue given the Deputy Commissioner by libellant June 8, 1953, and attached to respondent's Brief, that libellant was then in condition to transact business, but he did not file this suit until more than one month later, i. e., July 15, 1953.