Clifford R. WEST, Rosedale, Mississippi,
Plaintiff,

v.

UPPER MISSISSIPPI TOWING CORPO-
RATION, a Minnesota corporation,
Defendant.

No. 4–60–Civ.–164.

United States District Court
D. Minnesota,
Fourth Division.

Sept. 19, 1963.

Harvey Goldstein, Goldstein & Sterenfeld, New York City, and Philip Orthun, Lindquist, Magnuson & Glennon, Minneapolis, Minn., for plaintiff.

Edward Hayes, C. Roy Peterson, Lord, Bissell & Brook, Chicago, Ill., and Curtis L. Roy, Dorsey, Owen, Marquart, Windhorst & West, Minneapolis, Minn., for defendant.

DEVITT, Chief Judge.

This case arises on a motion for summary judgment or in the alternative to strike the complaint for failure to state a cause of action, on the ground that delay in commencing the action constitutes laches.

Requisite amount and diversity are present to establish jurisdiction.

Plaintiff West was employed as a seaman on August 29, 1954 by the defendant on its towboat FRANCES ANNE. On this date plaintiff suffered personal injuries to his left leg (ultimately necessitating amputation) when it was crushed between a barge and concrete lock wall as plaintiff was attempting to place a "bumper" in the area where the barge was about to strike the wall. The libel was filed on May 31, 1960, alleging that the injury was caused by unseaworthiness, and seeking under two counts, damages and maintenance and cure.

The defendant's original position on this motion was that the claim was barred by running of the three-year statutory period provided in the Jones Act, 46 U.S.C.A. § 688, which extends to seamen the right to sue for personal injuries caused by negligence. Defendant argued that the case of McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958), changed the established rule that maritime actions for unseaworthiness and for maintenance and cure are limited by the admiralty doctrine of laches, Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956), so that such actions were now subject to the same limitation period as a Jones Act claim. In a cogent opinion, the Honorable Gunnar H. Nordbye rejected this position and concluded that the limitation period for this maritime suit was governed by laches and measured by the analogous period of the Jones Act limitation. (Order, July 19, 1961). As this order is the law of the case, the Jones Act three-year limitation is applied herein as the "rule-of-thumb" to determine the presence or absence of laches.

It is evident on the face of the libel that there has been a delay in filing suit of over five and one-half years from the date of the accident, and of over two

and one-half years from the running of the analogous period of the Jones Act limitation. Admiralty Courts have settled that where the analogous statutory limitation imposed on negligence claims has run, laches on the part of the seaman will be presumed in a subsequent suit for maintenance and cure and for damages for personal injuries allegedly caused by unseaworthiness. Lipfird v. Mississippi Valley Barge Line Company, 310 F.2d 639 (3rd Cir., 1962); Vega v. The Malula, 291 F.2d 415 (5th Cir., 1961); and Oroz v. American President Lines, 259 F.2d 636 (2d Cir., 1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959).

■ The law requires that both inexcusable delay on the part of the libellant and prejudice to the defendant be present before laches will apply to bar the action. As stated in Gardner v. Panama R. Co., 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed 31 (1951):

> "Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief."

While this case does not explicitly hold that both inexcusable delay and prejudice must exist to bar the action, cases interpreting the Gardner decision support this view. Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 261 F.2d 861, 865 (5th Cir., 1958); McDaniel v. Gulf & South American Steamship Co., 228 F.2d 189, 192 (5th Cir., 1955), reversing 136 F.Supp. 892 (S.D.Tex.1954); and Dawson v. Fernley & Eger, 196 F.Supp. 816, 826 (E.D.Va.1961).

A separate hearing was had on this issue and the Court has had the benefit of a complete transcript, in addition to post-trial briefs, reply briefs, and other matter on record.

■ I am satisfied that the motion for summary judgment or to strike the complaint on the basis of laches should be denied. This determination is made on the basis that, even though there was inexcusable delay raising a presumption of prejudice, the record reveals sufficient affirmative evidence to rebut this presumption of prejudice, and defendant failed to show actual prejudice or injury resulting from the delay.

These conclusions will be divided into consideration of the two elements constituting laches, namely inexcusable delay and prejudice.

## INEXCUSABLE DELAY

Plaintiff averred in the complaint as excuse for the delay in filing suit, that (1) he had only recently become aware of his rights under Admiralty, and (2) he had "depended upon promises and assurances of the defendant and its agents that they would protect him in and about his rights as a seaman following his accident; but the said promises and assurances were wholly prejudicial to his interests and he was discouraged from instituting any suit in law more timely."

■ The law rejects the first ground for excuse. The Courts uniformly hold that ignorance of the law is not a sufficient excuse to allow maintenance of stale claims. Oroz v. American President Lines, 259 F.2d 636, 640 (2d Cir., 1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959); and Morales v. Moore-McCormack Lines, 208 F.2d 218, 221 (5th Cir.), affirming 109 F.Supp. 585 (S.D.Tex.1953).

■ Plaintiff's allegations that "promises and assurances" made by the defendant caused prejudicial reliance and delay in filing suit are not supported by the evidence. The trial developed the following sequence of events: The accident occurred on August 29, 1954. Plaintiff was immediately hospitalized and began receiving maintenance payments of $5.00 a day from the defendant, in lieu of other wages. None of the hospitalization was paid for by the plaintiff, but he now alleges maintenance costs for his prosthesis. Plaintiff was contacted by defendant's attorney soon after the accident, but apparently was not immediately approached by anyone from the company for the purpose of settlement or release of damages.

Plaintiff wrote to the company on February 28, 1955 (letter erroneously dated in September) seeking settlement negotiations by March 15, 1955. A release was ultimately signed on April 13, 1955 in consideration of $5,000.00. Plaintiff signed an "agreement" dated April 11, 1955 by which defendant agreed to employ him as a pilot trainee. From July 29, 1955 to May 12, 1958 plaintiff was employed by defendant as pilot trainee and pilot. On the latter date plaintiff voluntarily left the defendant's employ for personal reasons. He sought to return to a pilot position with defendant sometime in 1959, but was refused employment. Plaintiff contacted an attorney in 1958 apparently for the purpose of learning his admiralty rights. Except for extended periods after the accident and following his employment with defendant, plaintiff was regularly employed. This action was commenced on May 31, 1960.

There was considerable testimony bearing on the release executed in 1955, the intent being to show that the defendant's conduct with respect to the release directly resulted in prejudicial reliance by the plaintiff which in turn resulted in delay in filing the suit. There is evidence that the defendant's agents discouraged commencement of a suit by telling West that their lawyers would delay the case for an extended period, that he would have to give his lawyer one-half or one-third of the recovery and that he would have little left, and further that his maintenance payments would be discontinued and he would be unable to work for the defendant. However, these statements were made prior to execution of the release and do not sufficiently explain or excuse the delay in commencing suit after its execution. The libel was filed on May 31, 1960, a period of more than five years from the execution of the release (April 13, 1955) and a period of more than two years from the date West voluntarily left defendant's employ (May 12, 1958). Because of the nature of the injury the plaintiff, if he was not aware at the time of settlement, must have soon learned of the continued discomfort, loss of agility, and expense of maintaining an artificial limb. Ordinary diligence dictates that the action should have been more timely filed. Claussen v. Mene Grande Oil Company, 275 F.2d 108, 113 (3rd Cir., 1960). The evidence is not sufficient to show diligence during the five-year period which elapsed since the execution of the release. Thus the alleged prejudicial reliance arising at the time of settlement is not sufficient to excuse the delay.

Plaintiff further asserts that refusal to rehire him in 1959 constitutes a breach of the "promises and assurances" and compounds the prejudicial reliance, as the "obvious inference" was that the job was to be permanent. The evidence indicates that the offer to employ West as a pilot trainee was on a trial basis. He apparently performed satisfactorily as he continued in the defendant's employ until May 12, 1958, when he voluntarily left the job. There was no promise by the defendant that West would have a job for life, and it does not appear that West relied on any such assurances. Thus the refusal to re-employ him cannot constitute prejudicial reliance. In any event, the delay in commencing suit until May 31, 1960, which is more than two years from the date West left defendant's employ, and nearly a year from the date of refusal, (evidence does not establish the exact date), is unexplained and supports a claim of unreasonable delay.

The above conclusions are further supported by the fact that West has been regularly employed more than one-half the time following the settlement, and could have afforded an attorney's advice as to his maritime rights at an earlier date. He finally did consult an attorney in 1958, but the action was still delayed for two years until 1960. Plaintiff asserts in his brief that the first consultation date was in January, 1960, but this does not explain the delay until May 31, 1960. The cases and logic dictate that reasonable diligence must be exercised. Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1956). The delay involved in this case is unrea-

sonable and evidence does not warrant excusing it.

Defendant asserts that plaintiff must show "unusual conditions or extraordinary circumstances" to excuse the delay, and cites several Eighth Circuit cases in support thereof. Redd v. Brun, 157 F. 190, 192 (8th Cir. 1907); Childs v. Missouri, K. & T. R. Co., 221 F. 219, 221–222 (8th Cir. 1915). Our finding that the delay is inexcusable on the basis of its unreasonableness makes unnecessary a determination of the defendant's contention that the plaintiff must meet a higher burden of proof to excuse the delay.

## PREJUDICIAL DELAY

■ An equally important element necessary to establish laches is that there must be some prejudice to the defense as a result of the delay. Gardner v. Panama R. Co., 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951). As was stated in the case of Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 261 F.2d 861, 865 (5th Cir. 1958):

"Laches is much more than time. It is time plus prejudicial harm, and the harm is not merely that one loses what he otherwise would have kept, but that delay has subjected him to a disadvantage in asserting and establishing his claimed right or defense."

In Claussen v. Mene Grande Oil Company, 275 F.2d 108, 113 (3rd Cir. 1960), vacating 163 F.Supp. 779 (D.C.Del.1958), the Court held that "the presence of affirmative evidence pro and con on this issue (injury from the fact of delay) made appropriate some explicit finding and conclusion on this point." The natural result of this ruling is that if the trial court finds there is sufficient "affirmative evidence" rebutting the presumption of injury arising from the "fact of delay" there will be no laches. See Vega v. The Malula, 291 F.2d 415, 420 (5th Cir. 1961).

Thus, delay per se is not sufficient to constitute laches. "The test of laches is prejudice to the other party." Gutier-rez v. Waterman Steamship Corp., 373 U.S. 206, 83 S.Ct. 1185, 1191, 10 L.Ed. 2d 297 (1963). In a case where the analogous statutory period has run and the presumption of prejudice is raised, even though there is inexcusable and unreasonable delay, there will be no laches where there is evidence rebutting the presumption of prejudice. See Gardner v. Panama R. Co., 342 U.S. 29, 30–31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951); and Cities Service Oil Co. v. Puerto Rico Lighterage Co., 305 F.2d 170, 171 (1st Cir. 1962), vacating 189 F.Supp. 682 (D.C.P.R.1960).

■ At first blush this case appears to be a classic example of a case where laches should apply. The delay was totally inexcusable. Eleven of the seventeen crewmen employed at the time of the accident have left the defendant's employ, including the captain, pilot and first mate. Two potential witnesses have died. The identity and availability of lockmen who could possibly testify have not been shown and have apparently been lost for the trial. The availability of the remaining six crewmen was not established. The Court is satisfied, however, that the evidence adduced at the hearing is sufficient to rebut the "apparent" prejudice resulting from each of these factors.

It appears from the evidence that a full investigation was made by the defendant at the time of the accident. Fourteen statements were taken from various crewmen immediately following the accident in September, 1954. Four additional statements were taken in November, 1961 from members of the crew—two statements being taken for the first time, and two being repeats of the 1954 investigation. The crewmen who had been on the barge with West, the Captain, and the majority of the remainder of the crew who may have witnessed the accident or been present at the scene thereafter, are apparently available for the trial. In addition to the defendant's investigation, the Coast Guard made a separate investigation of the accident and would have records available for use at the trial. It appears that there will be ample med-

ical testimony and evidence available, bearing on the degree of disability and its effect on earning capacity.

Plaintiff, as one of the grounds to the unseaworthiness charge, has asserted that grain on the deck of the barge caused him to slip. Defendant argues that at the time of the accident West made no claim that the accident was caused by grain on the deck, and that therefore it has been prejudiced by this belated claim because it had been, in effect, misled by the plaintiff and had no opportunity to investigate the condition of the deck at the time of the accident. Defendant introduced statements made by West to an investigating Coast Guard officer 18 days after the accident:

"Q Have you any idea as to what caused you to fall?

"A No, sir, I don't know, it might have been the grain on the barge, it gets damp, they had that pump on the barge and the water went down on the sides.

"Q You don't actually know whether or not this deck had grain or whether it was wet?

"A No, I was too busy and in a hurry to get there with the fender. I thought I was watching myself."

There has been no showing that the defendant relied on these statements in making its investigation at the time of the accident. Irregardless, it is inconceivable that an investigation by the defendant immediately after the accident did not involve the condition of the deck where the accident occurred. Even if there was no investigation of this factor, there appear to be numerous crewmen available who can testify as to the condition of the deck.

Defendant next asserts that it has been prejudiced by the death of two potential witnesses. One of these men was a fleet watchman at the landing where the FRANCES ANNE picked up the barge on which the accident occurred. He could allegedly testify as to the condition of the deck of the barge, and could further testify as to the degree of list on the barge caused by water seepage in the hold. Even assuming that this watchman could have testified on these issues at the trial, it does not appear that he witnessed the accident or was on the barge at any time thereafter, and it must be concluded that his testimony on these matters would be merely cumulative.

The second man was the notary public before whom West executed the release. Defendant asserts that this witness could have testified that the agent of the company finished reading the release to West before he signed, hence rebutting West's denial that he had read the complete release. At the hearing the company agent testified that they finished reading the release. There appears to be no assertion by the plaintiff that there was duress or pressure at the time of the signing. On the contrary, he admits that the same was his voluntary act, but claims that he did not fully comprehend its significance. Thus the notary would supposedly be able to affirm the defendant's agent that the entire release had been read. Irregardless of this, a separate and equally important factor bearing on the validity of the release is whether the seaman "fully comprehended" its significance. The notary could not help on this issue, and it does not appear that he did anything other than a pro forma acknowledgment. The agent's testimony and the plaintiff's admission appear to be sufficient to offset any significant disadvantage caused by the notary's death.

It is true that credibility of the witnesses will probably play a significant role in this trial, and that both of the potential witnesses who died were unconnected with either of the parties, and hence more credible witnesses as they would be uninterested in the outcome of the trial. The defendant, however, is not entitled to the presumption that every scintilla of lost evidence, or every dead witness, would be favorable to its position. Defendant's counsel admitted that the dead watchman could possibly testify more favorably to the plaintiff's case. The defendant is entitled to a general presumption of prejudice resulting from

the inexcusable delay. The death of possible witnesses is merely one element constituting the general presumption, and is not entitled to its own independent presumptive weight in favor of the defendant. The death of the two possible witnesses has not prejudiced the defendant to the extent that it is at an unfair disadvantage in asserting its defense. The relative value of their testimony has been discounted by the testimony at the hearing.

The alleged loss of testimony of the unidentified lockmen who may have witnessed the accident, or who more probably were present after it happened, does not appear to hamper a defense to this action. Their testimony would undoubtedly duplicate that of the several other seamen on the barge who may have witnessed the accident, or of the crewmen who were present after the accident. Therefore it would appear to be merely cumulative and would not place the defendant at any disadvantage.

▪ The defendant further asserts that it has been prejudiced by the failure of the plaintiff to show the availability of two attorneys with whom the plaintiff admittedly made contact prior to signing the release, but from whom he denies having received any advice as to his admiralty rights. The legal advice available at the time of signing the release is relevant to a determination of the validity of the release. Garrett v. Moore-McCormack Co., 317 U.S. 239, 248, 63 S.Ct. 246, 87 L.Ed. 239 (1942). The defendant asks the Court to indulge the presumption that these attorneys are either dead or unavailable, and that their testimony would contradict the plaintiff's. To do this the Court would have to disbelieve the testimony of West, who appears in every respect to be a credible person. Admitting that one of the attorneys is unavailable because he was never identified, assuming that the other attorney had died or become otherwise unavailable, and presuming that the attorneys would contradict the plaintiff, then admittedly the defendant would be at a disadvantage in going to trial, and this would constitute prejudice (whether sufficient to raise laches the Court is in doubt). But whether the Court should rebut the testimony of the plaintiff with these assumptions and resulting presumptions, and raise the defense of laches on this ground alone, when considering that this evidence constitutes only a part of that comprising the release issue, is doubtful. Defendant has had knowledge of these attorneys for at least two years since a 1961 deposition taken of West, and could easily have traced one of the attorneys who lived in West's home town.

▪ Defendant asserts that plaintiff's failure to show the present availability of crewmen who are potential witnesses results in a presumption that they are not alive, or not available. The unavailability of material witnesses is certainly a meritorious defense. Several cases have raised a presumption of prejudice and applied laches where there was failure to show the availability of witnesses. In Wilson v. Northwest Marine Iron Works, 212 F.2d 510 (9th Cir. 1954) the Court allowed the defense and rejected argument that unavailable witnesses had nothing material to offer. However, this case is distinguishable as there was a specific finding that material witnesses had become unavailable, and further that the testimony of witnesses who appeared had become hazy, vague, and unclear. An affidavit stating that affiant "believes" witnesses to be available, but which did not state the ground for the belief, was found insufficient to rebut an affidavit specifying material witnesses who could not be located. Marshall v. International Mercantile Marine Co., 39 F.2d 551, 552 (2d Cir. 1930). Petition of Esso Shipping Co., 121 F.Supp. 837 (S.D.Tex.1954), cited by defendant, is distinguishable on the facts as it involved an attempt by a seaman to file a claim after date fixed by monition had expired. While the Court noted that many witnesses were probably unavailable due to the lapse of time, it appears that the decision was based on an effort to terminate claims filed after the monition period. Irregardless, the decision is based on the equities

of that case and is not necessarily persuasive herein.

The plaintiff's only attempt to show the availability of the crewmen who may be witnesses was by way of interrogatory introduced at the hearing. In part, these answers reflect the last known address of each of the crewmen, whether or not they are still employed by the defendant, and the dates when statements were taken from each of these men. An analysis of these answers reveals the following facts: Eleven of the seventeen crewmen are no longer employed by the defendant. Of the seventeen crewmen, the defendant took statements from fourteen immediately following the accident in 1954. In November, 1961 (a year and one-half after commencement of the action), defendant was able to locate and obtain statements of three men who were no longer in its employ, and a fourth statement from one man still in its employ. Three of the four men contacted in 1961 were on the same barge as West at the time of the accident. The fourth man was the pilot who had been on duty. At the hearing on this motion the defendant produced as one of its witnesses, T. J. Trosclair, Master of the FRANCES ANNE at the time of the accident, but who is no longer in defendant's employ. According to defendant's answers to interrogatories, this man was also on the barge at the time of the accident. (This is contradicted by the evidence at the hearing, but the number of crewmen present raises another issue comprising the charge of unseaworthiness. See Tr. p. 5). Thus it appears that the Master, the Pilot, and three of the crewmen on the barge have been located and have been available to the defendant for questioning at some time during the last two years. It is not too probable that the defendant has lost contact with the four men from whom statements were taken in 1961. Indeed if the defendant had lost contact through death or otherwise, this probably would have been shown at the hearing.

Thus excluding these five men and the plaintiff, eleven crewmen are left for accounting. Five of these were still in the defendant's employ at the time the interrogatories were answered (filed September, 1962). Probably they are still alive and in defendant's employ today. Although six crew members have not been accounted for, their necessity to the trial of this action is not apparent from the record. This Court need not presume that the apparent unavailability of these remaining crewmen would prejudice the defendant where there is abundant evidence that all material witnesses, and the majority of potential witnesses, are or will probably be available for the trial.

Defendant next asserts that the delay raises the presumption that memories have become dimmed, and that witnesses will not be able to recollect pertinent facts. At the hearing on this matter the testimony of the three witnesses who appeared did not seem to be suffering to any great extent from the delay. The defendant's agent testified in fairly accurate detail as to what was said and what transpired at the time of signing the release. The plaintiff West testified in detail as to the conditions surrounding the accident, and occurrences thereafter. It was shown that his testimony as to the degree of list varied considerably from an earlier deposition statement, and that in fact he could only "guess" as to the degree of list on the barge. While this indicates a possible dimming of memory, it does not necessarily follow that the inaccuracy was caused by the delay, or that it will place the defendant at a serious disadvantage in asserting a defense. Unless someone had accurately measured the degree of list on the barge on the day of the accident, the only testimony that could possibly be obtained would be by guess, whether the trial was two years or ten years after the accident. It is true that perhaps more of an "educated guess" could be given closer to the date of the accident. But the degree of variance between this "guess" and a subsequent "guess" would not appear to so prejudice the defendant as to entitle him to the benefit of laches. The Captain testified that he had inspected the deck

where the accident happened but did not "recollect" seeing any grain. While the inability to "recollect" is not as advantageous to the defendant as having a witness testify that he did not see any grain on the deck, there is an equal possibility that if he could recollect he would testify that there was grain on the deck. Irregardless, it appears that the presence of grain on the deck can be either affirmed or denied by the other available witnesses or by the various investigation reports made at the time of the accident. The Captain was able to recall other events occurring on the day of the accident, and by slight probing was able to recall sequence of events which he could not initially remember. Consequently, in the absence of a showing of more serious memory impairment resulting from the lapse of time, it does not appear that the defendant has been placed at a significant disadvantage in asserting its defense.

This case involves a claim based on five separate allegations of unseaworthiness: employment of a pilot not equal to the calling of the trade; improperly positioned barge in tow; a shorthanded crew; grain on the deck; and list of the barge. While evidence was not adduced as to each of these unseaworthiness claims, this Court is satisfied that there is no "significant prejudice" to the defendant in preparing and asserting defenses to each of these claims. Claussen v. Mene Grande Oil Company, 275 F.2d 108, 113 (3rd Cir. 1960).

■ Laches as a defense to a maritime suit is not to be measured by a mechanical or strict application of the statute of limitations. Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 533, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). The equities of the parties must be considered, and the rule is that the delay which will defeat an admiralty suit depends on the "peculiar equitable circumstances of that case." The Key City, 14 Wall. 653, 660, 81 U.S. 653, 660, 20 L.Ed. 896 (1871). Where the defendant has not been placed at an unfair disadvantage in asserting a defense, admiralty will not raise laches where it appears that an injustice would

be perpetrated by denying an injured seaman his right to a trial on the merits.

Seamen are the wards of admiralty. Aguilar v. Standard Oil Co., 318 U.S. 724, 732, 63 S.Ct. 930, 87 L.Ed. 1107 (1942). Their rights should be protected where the remedy can be reasonably broadened within the scope of this admiralty obligation of care. They "should be the beneficiaries of a liberal attitude in consonance with the dictates of sound maritime policy." Companile v. Societa G. Malvicini, 170 F.Supp. 667, 670 (S.D. N.Y.1959). See Garrett v. Moore-McCormack Co., 317 U.S. 239, 246, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

However, although the Court has made the finding that there *appears* to be no prejudice resulting from witnesses' lack of memory or the inability to locate other seamen who were at the scene of the accident, this does not indicate that there may not be possible prejudice from these sources. While both parties had a full opportunity to offer evidence bearing on the availability of witnesses and impairment of memory, neither party sought to show the present availability or unavailability or condition of memory of the numerous witnesses that may be called.

As noted, the Court has found that there was sufficient evidence offered to rebut the presumption of prejudice from these conditions to allow the plaintiff West to get to the trial on the merits.

But, because of the unreasonable and extraordinary delay in commencing the suit, with the resulting possibility of unavailability of material witnesses, or serious memory impairment, the Court feels that the defendant is entitled to carry the defense of laches into the trial on its merits. If it appears that the defendant has been placed at a significant disadvantage in asserting its defense, either by reason of inability to locate witnesses or the failure of witnesses to recall the events on the date of the accident, it may renew the plea of laches at the time of trial.

Deferment of the issue of laches until the trial of the action has been done satis-

factorily in a number of cases. Dawson v. Fernley & Eger, 196 F.Supp. 816, 826 (E.D.Va.1961). See Lipfird v. Mississippi Valley Barge Line Company, 310 F.2d 639, 640 (3rd Cir. 1962) (Court affirmed directed verdict for defendant based on laches); McDaniel v. Gulf & South American Steamship Co., 228 F.2d 189, 193 (5th Cir. 1955).

The motions for summary judgment, and to strike the complaint are denied.